## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Rosemary Roussaw, | : | |
| | : | No. 2:19-cv-01458-RBS |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | Hon. R. Barclay Surrick, J. |
| Mastery Charter High School, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### Order

*AND NOW*, this                day of                    , 2019, upon consideration of Defendants' Motion for Judgment on the Pleadings and any response thereto, it is hereby *ORDERED* and *DECREED* that the Motion is *GRANTED*. Judgment is hereby entered against Plaintiff and in favor of Defendants on all counts of the Amended Complaint.

BY THE COURT:

_____

Hon. R. Barclay Surrick, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Rosemary Roussaw, | : | No. 2:19-cv-01458-RBS |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Mastery Charter High School, *et al.*, | : | |
| Defendants. | : | |

### <u>Defendants' Motion for Judgment on the Pleadings</u>

*AND NOW*, come Defendants, Mastery Charter High School, Mastery Charter School Pastorius-Richardson Elementary, Scott Gordon, Hillary Meserve, Eric Langston, and Michael Patron (hereinafter "Defendants"), by and through their undersigned counsel, and move for judgment on the pleadings pursuant to FED R. CIV. P. 12(c), and in support thereof aver as follows:

1.      Plaintiff, Rosemary Roussaw, as legal guardian of A.J., a minor, initiated this action by filing a Complaint on April 5, 2019.

2.      On July 10, 2019, Plaintiff filed an Amended Complaint to correct the identity of one of the Defendants.

3.      On July 22, 2019, Defendants filed an Answer to Plaintiff's Complaint.

4.      Pursuant to FED R. CIV. P. 12(c), the pleadings are closed.

5.      Plaintiff's Amended Complaint alleges four (4) causes of action arising out of an incident in which Plaintiff alleges that A.J. was subjected to a sexual assault by another minor student while enrolled at Mastery Charter School Pastorius-Richardson Elementary.

6.      Specifically, Plaintiff's Amended Complaint alleges claims for:

- Violations of Title IX against Mastery Charter High School and Mastery Charter School Pastorius-Richardson Elementary;

- Claims under 42 U.S.C. § 1983 against all Defendants;

- Intentional Infliction of Emotional Distress against all "Individual" Defendants; and

- Breach of Fiduciary Duty against all "Individual" Defendants.

7.      As Plaintiff's Amended Complaint is devoid of any allegations from which Plaintiff could show deliberate indifference by Defendants that resulted in harassment or discrimination, Plaintiff's claim under Title IX fails to state a claim for which relief may be granted.

8.      As Defendants do not have a constitutional obligation to protect Plaintiff from criminal acts by a third-party, Plaintiff's claim under 42 U.S.C. § 1983 fails to state a claim for which relief may be granted.

9.      Mr. Gordon, Ms. Meserve, Mr. Langston, and Mr. Patron are entitled to qualified immunity with regard to Plaintiff's claim under 42 U.S.C. § 1983.

10.     As Plaintiff's Amended Complaint fails to identify any conduct by any individual Defendant that "shocks the conscience," Plaintiff's claim for Intentional Infliction of Emotional Distress fails to state a claim for which relief may be granted.

11.     As Plaintiff's Amended Complaint fails to set forth any factual allegations to suggest that any individual Defendant acted for his or her own personal gain, Plaintiff's claim for Breach of Fiduciary Duty fails to state a claim for which relief may be granted.

12.     The individual Defendants are entitled to immunity under the Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8541, *et seq.*, from all common law claims.

13.     Plaintiff's Amended Complaint fails to state a claim for punitive damages.

14.     Pursuant to FED. R. CIV. P. 12(c), Plaintiff's Amended Complaint should be dismissed for failure to state a claim for which relief may be granted.

**WHEREFORE**, Defendants respectfully request that this Honorable Court grant this Motion and enter an Order dismissing Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

DEASEY, MAHONEY & VALENTINI, LTD.

By: _____

Francis J. Deasey, Esquire
Pa. Attorney Identification No. 25699
Rufus A. Jennings, Esquire
Pa. Attorney Identification No. 93030
1601 Market Street, Suite 3400
Philadelphia, PA 19103
Phone:  (215) 587-9400
Fax:     (215) 587-9456
Email:  fdeasey@dmvlawfirm.com
            rjennings@dmvlawfirm.com

Date: 7/23/19

<u>**Certificate of Service**</u>

I, Rufus A. Jennings, hereby certify that on the date set forth below, I did cause a true and correct copy of the foregoing Motion for Judgment on the Pleadings and Memorandum of Law in Support thereof to be filed with the Court's ECF/PACER electronic filing system, where it was available for immediate viewing and download to the following individuals:

Steven Schatz, Esquire
**SCHATZ & STEINBERG, P.C.**
1500 John F. Kennedy Blvd.
Two Penn Center, Suite 1300
Philadelphia, PA 19102

Jason L. Pearlman, Esquire
**THE PEARLMAN LAW FIRM, PLLC**
Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004

Rufus A. Jennings, Esquire

Date: 7/23/19

- 4 -

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Rosemary Roussaw, | : | No. 2:19-cv-01458-RBS |
| Plaintiff, | : | |
| v. | : | |
| Mastery Charter High School, *et al.*, | : | |
| Defendants. | : | |

**Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings**

*AND NOW*, come Defendants, Mastery Charter High School, Mastery Charter School Pastorius-Richardson Elementary, Scott Gordon, Hillary Meserve, Eric Langston, and Michael Patron (hereinafter "Defendants"), by and through their undersigned counsel, and submit this Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings.

I.     **Introduction and Procedural History**

Plaintiff, Rosemary Roussaw, as legal guardian of A.J., a minor, initiated this action by filing a Complaint on April 5, 2019. Despite reaching an agreement with prior counsel to grant an extension until June 2, 2019, to allow for Defendants to respond to the Complaint, Plaintiff, through her counsel, filed for a default of all Defendants on May 13, 2019. On May 20, 2019, the Parties filed a Stipulation to set aside the defaults that had been entered by the Clerk of Courts and to allow Defendants to file an Answer to the Complaint. That Answer was filed on May 31, 2019. Pursuant to the Court's June 20, 2019, Order, Plaintiff filed an Amended Complaint on July 10, 2019, to correct the identity of one of the Defendants. On July 22, 2019, Defendants filed an Answer to Plaintiff's Amended Complaint.

Plaintiff's Amended Complaint arises out of an incident that took place on or about May 27, 2016, at the Pastorius-Richardson Elementary School, which serves kindergarten through eighth (8th) grade. According to the Amended Complaint, on or about that date, Plaintiff was involved in an incident of sexual assault by another minor student. Administrators at the School heard rumors about this incident and began an investigation, but were unable to identify the students allegedly involved. On June 8, 2016, Assistant Principal Eric Langston observed video footage showing A.J. and another student entering an empty classroom. However, when questioned, both students denied that anything had taken place in that room.

The following day, on June 9, 2016, Mr. Langston was able to confirm that a video of the incident had been made and identified A.J. and the other student involved. Upon learning of this, the School Administrators called the parents for both children and held a meeting at the School with police officers. As a result of information obtained during that meeting, it was determined that the sexual conduct that took place was consensual, and both students were suspended for the remainder of the school year for a violation of the School's Code of Conduct. It also was determined that A.J. was unaware that the incident had been video recorded. The other student, who was in eighth (8th) grade, was not permitted to take part in graduation proceedings. A.J.'s guardians declined to pursue any criminal charges against the other student, but asked that he mow their lawn over the summer as a punishment.

Following the conclusion of the School's investigation and decision, a complaint was filed with the U.S. Department of Education, Office of Civil Rights. An investigation was conducted, during which there was no evidence obtained that any Administrator or teacher at the School had any information to place them on notice that A.J. was likely to be the victim of sexual assault.

Plaintiff now brings this action, seeking monetary damages against Defendants based on the actions of a minor student who was not made a party hereto. Without setting forth any facts to support her claims, Plaintiff alleges that A.J.'s claimed injuries somehow resulted from an absence of policies regarding investigation of complaints. She also makes baseless claims against several School Administrators, all of which are subject to qualified and/or statutory immunity. For the reasons set forth herein, Defendants now move for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c).

II.   **Factual Allegations**[1]

- Plaintiff is the grandmother and legal guardian of A.J.[2]

- Plaintiff is a sixteen (16) year old female, who was a seventh grade student at Pastorius-Richardson Elementary School in May-June 2016.[3]

- Scott Gordon is the CEO of Mastery Charter High School.[4]

- Hillary Meserve was the Principal of Pastorius-Richardson Elementary School in May-June 2016.[5]

- Eric Langston was the Assistant Principal of Pastorius-Richardson Elementary School in May-June 2016.[6]

- Michael Patron was the Director of Compliance for Mastery Charter High School in May-June 2016.[7]

---

[1] For purposes of this Motion the allegations of Plaintiff's Amended Complaint are accepted as true. *See e.g. Allah v. Al-Hafeez*, 226 F.3d 247, 249 (3rd Cir. 2000). Nothing in these moving papers shall be construed as an admission to any disputed allegations.
[2] Plaintiff's Amended Complaint, attached hereto as Exhibit "A", at ¶ 2.
[3] Exhibit "A", at ¶ 2.
[4] Exhibit "A", at ¶ 5.
[5] Exhibit "A", at ¶ 6.
[6] Exhibit "A", at ¶ 7.
[7] Exhibit "A", at ¶ 8.

- On May 27, 2016, a fifteen (15) year old student in the eighth (8th) grade approached A.J. in the auditorium and asked if he could have sex with her.[8]

- A.J. responded, "No."[9]

- R.H. persisted, and A.J. said "I can't.  I never did this before."[10]

- R.H., said, "It's ok," pulled up A.J.'s dress, pulled down her underwear, and had sexual intercourse with her.[11]

- "A.J. did not consent to having sexual intercourse with R.H. through her words or conduct."[12]

- R.H. recorded a video of the incident on his cell phone without A.J.'s knowledge.[13]

- A.J. did not report the incident to anyone.[14]

- Mr. Langston heard about the incident on May 27, 2016, and commenced an investigation on the same day.[15]

- The cell phone video taken by R.H. was shared among students at the School.[16]

- Approximately a week later, Mr. Langston obtained a copy of the video and showed it to Ms. Meserve.[17]

- On June 9, 2016, Plaintiff was called to a meeting at the school with various Administrators, A.J., R.H., R.H.'s father, and Plaintiff's daughters (presumably A.J.'s mother and aunt).[18]

---

[8] Exhibit "A", at ¶ 13.
[9] *Ibid.*
[10] *Ibid.*
[11] *Ibid.*
[12] Exhibit "A", at ¶ 14.
[13] Exhibit "A", at ¶ 16.
[14] Exhibit "A", at ¶ 17.
[15] Exhibit "A", at ¶¶ 18-19.
[16] Exhibit "A", at ¶ 20.
[17] Exhibit "A", at ¶ 21.
[18] Exhibit "A", at ¶ 22.

- 4 -

- Police officers also were present at that meeting.[19]

- "Defendants" concluded that the incident was consensual, but that A.J. did not consent to being videotaped.[20]

- A.J. was suspended from school for the rest of the school year.[21]

### III.   Legal Standard

Pursuant to FED. R. CIV. P. 12(c), "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) should be analyzed under the same standard as a motion to dismiss filed pursuant to FED. R. CIV. P. 12(b)(6). *Turbe v. Government of the Virgin Islands*, 938 F.2d 427. 428 (3rd Cir. 1991). However, in deciding a motion filed under Rule 12(c), the court may consider "matters of public record, and authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion." *Chemi SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 496–97 (E.D. Pa. 2005); *see also Ieraldi v. Mylan Labs, Inc.*, 230 F.3d 594, 600, fn. 3 (3rd Cir. 2000) ("we may take judicial notice at any stage of the proceeding of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned.") Pursuant to FED. R. CIV. P. 10(c), "A copy of a written instrument that is an exhibit to a pleading is a part of that pleading for all purposes." The City of Chester Ordinance is authentic, not subject to any dispute, and a public record of which the Court can take judicial notice.

This Court has set forth the applicable standard in deciding Rule 12(c) motions:

> A Motion for Judgment on the Pleadings under Fed. R. Civ. Proc. 12(c) may be granted when the movant clearly establishes that no material issue of fact remains to be resolved and that it is entitled

---

[19] *Ibid.*
[20] Exhibit "A", at ¶¶ 23-24.
[21] Exhibit "A", at ¶ 25.

> to judgment as a matter of law. The Court construes the facts
> presented in the pleadings and the inferences drawn therefrom in
> the light most favorable to the non-moving party. And it may
> consider undisputedly authentic documents attached to or
> submitted with the Complaint, as well as evidence outside the
> complaint/other items of record.

*Wiseman Oil Co., Inc. v. TIG Insurance Co.*, 878 F. Supp. 2d 597, 600-01 (E.D. Pa. 2012) (*internal citations omitted*). As set forth below, in light of the admissions contained in Plaintiff's Amended Complaint, there are no factual issues to be resolved, and judgment may be entered as a matter of law. Accordingly, judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) should be entered in favor of Defendants, and Plaintiff's Amended Complaint should be dismissed.

## IV.   **Legal Argument**

### a.   *Plaintiff's Amended Complaint Fails to Set Forth a Plausible Claim Under Title IX*

Count I of Plaintiff's Amended Complaint purports to set forth a claim under Title IX, 20 U.S.C. § 1681, *et seq.* Plaintiff's claim is based on the conclusion that, "Defendants were deliberately indifferent to the sexual harassment and sexual assault against A.J."[22] However, the facts, as set forth in the Amended Complaint, make it clear that Defendants' response to rumors of the incident between A.J. and R.H. was anything but indifferent.

Pursuant to 20 U.S.C. § 1681(a), "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." In *Davis v. Monroe County Board of Education*, 526 U.S. 629, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999), the Supreme Court held that a private cause of action could exist in cases involving student-on-student harassment, but only under very limited circumstances. The Court held:

---
[22] Exhibit "A", at ¶ 40.

> *Gebser* thus established that a recipient [of federal funding] intentionally violates Title IX , and is subject to a private damages action, where the recipient is deliberately indifferent to known acts of teacher-student discrimination.  …  We consider here whether the misconduct identified in *Gebser* – deliberate indifference to known acts of harassment – amounts to an intentional violation of Title IX, capable of supporting a private damages action, when the harasser is a student rather than a teacher.  We conclude that, in certain limited circumstances, it does.

*Davis*. at 643.  The Court further explained the scope of those "certain limited circumstances":

> The language of Title IX itself – particularly when viewed in conjunction with the requirement that the recipient have notice of Title IX's prohibitions to be liable for damages – also cabins the range of misconduct that the statute proscribes.  The statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs.  If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference "subject[s]" its students to harassment.  That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it.

*Id*. at 644-45.  The Court concluded that:

> These factors combine to limit a recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs.  Only then can the recipient be said to "expose" its students to harassment or "cause" them to undergo it "under" the recipient's programs.

*Id*. at 645.  Even if A.J. and R.H. were found to be under the School's control during the incident in the auditorium (a question as to which there is significant dispute), there is no evidence that the School was deliberately indifferent to harassment.

In *Davis*, the plaintiff's minor daughter was subjected to a pattern of harassment by another student over a period of "many months."  This conduct included unwelcome comments and groping, some of which took place during classes, and was reported to school staff and

administrators.  At one point, a group of female students, including the plaintiff's daughter, tried

to complain to the principal about the harassment, but were turned away.  After several months

of complaints of harassment being ignored, the harasser eventually was charged (and pled guilty

to) sexual assault.  No disciplinary action was taken against the harasser, and no attempt was

made to separate the harasser from the plaintiff's daughter.  Based upon these facts, the Supreme

Court acknowledged that a claim under Title IX could proceed, holding:

> Applying this standard to the facts at issue here, we conclude that
> the Eleventh Circuit erred in dismissing petitioner's complaint.
> Petitioner alleges that her daughter was the victim of repeated acts
> of sexual harassment by G.F. over a 5-month period, and there are
> allegations in support of the conclusion that G.F.'s misconduct was
> severe, pervasive, and objectively offensive.  The harassment was
> not only verbal; it included numerous acts of objectively offensive
> touching, and, indeed, G.F. ultimately pleaded guilty to criminal
> sexual misconduct.  Moreover, the complaint alleges that there
> were multiple victims who were sufficiently disturbed by G.F.'s
> misconduct to seek an audience with the school principal.  Further,
> petitioner contends that the harassment had a concrete, negative
> effect on her daughter's ability to receive an education.  The
> complaint also suggests that petitioner may be able to show both
> actual knowledge and deliberate indifference on the part of the
> Board, which made no effort whatsoever either to investigate or to
> put an end to the harassment.

*Id.* at 653-54.

Applying the same standard to the facts of this matter require the opposite conclusion.

Unlike in *Davis*, Plaintiff alleges a single incident on a single day.  While it was a serious

incident, Plaintiff has not set forth any facts from which the Court could conclude that the School

knew or should have known that the assault was likely to take place.  Plaintiff does not allege

that A.J. or her guardian ever complained to anyone at the School about R.H.  To the contrary,

Plaintiff affirmatively alleges that "A.J. was fearful and ashamed and did not say anything to

anyone about the sexual assault by R.H."[23]  On the other hand, as admitted by Plaintiff[24], Mr. Langston immediately took action to investigate the video once he had notice of it.  The School was not aware of any harassment, did not ignore complaints of harassment, and acted immediately when it heard rumors that an incident had taken place, despite A.J.'s refusal to cooperate in the investigation.   Ultimately, when the School learned the details of what happened, it came to a conclusion and determined that the incident was consensual.   These actions, to affirmatively identify and investigate possible incidents of sexual harassment, belie any suggestion that the School was deliberately indifferent.

That Plaintiff now contends that the conclusion reached as to whether the incident was consensual was in error does not render the substantial acts taken to investigate "deliberate indifference."  The Supreme Court made clear that the standard set forth to establish a plausible claim for student-on-student harassment under Title IX did not require that the School come to the correct conclusion.  As the Court stated:

> We stress that our conclusion here – that recipients may be liable for their deliberate indifference to known acts of peer sexual harassment – does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action.  We thus disagree with respondents' contention that, if Title IX provides a cause of action for student-on-student harassment, nothing short of expulsion of every student accused of misconduct involving sexual overtones would protect school systems from liability or damages.  Likewise, the dissent erroneously imagines that victims of peer harassment now have a Title IX right to make particular remedial demands.  In fact, as we have previously noted, courts should refrain from second-guessing the disciplinary decisions made by school administrators.
>
> School administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed "deliberately indifferent" to acts of student-on-student harassment only where

---

[23] Exhibit "A", at ¶ 17.
[24] *Id.* at ¶¶ 18-19.

> the recipient's response to the harassment or lack thereof is clearly
> unreasonable in light of the known circumstances. The dissent
> consistently mischaracterizes this standard to require funding
> recipients to "remedy" peer harassment, and to "ensur[e] that ...
> students conform their conduct to" certain rules. Title IX imposes
> no such requirements. On the contrary, the recipient must merely
> respond to known peer harassment in a manner that is not clearly
> unreasonable.

*Id.* at 648-49 (*internal citations omitted*). As noted above, the investigation conducted by the

School did include an examination as to whether the incident between A.J. and R.H. was

consensual or non-consensual. While Plaintiff can assert that the determination was incorrect,

there is no basis to suggest that it was so "clearly unreasonable in light of the known

circumstances" as to constitute deliberate indifference.

The Third Circuit's decisions in light of *Davis* also requires the dismissal of Plaintiff's

Title IX claim. As the Third Circuit has held:

> Under Title IX, recipients of federal funding may be liable for
> "subjecting" their students to discrimination where the recipient is
> deliberately indifferent to known acts of student-on-student sexual
> harassment and the harasser is under the school's disciplinary
> authority. When faced with allegations of student-on-student
> sexual harassment, a school and its officials will be deemed
> deliberately indifferent where they cause students to undergo
> harassment or make them liable or vulnerable to it, and the
> response to the harassment or lack thereof is clearly unreasonable
> in light of known circumstances, Whether the response was
> clearly unreasonable may be determined as a matter of law.

*M.J.G. v. School District of Philadelphia*, 2019 WL 2305027, *4 (3rd Cir. May 30, 2019). In

*M.J.G.*, a student reported several incidents of alleged sexual harassment; one in which a male

student took M.J.G.'s hand and placed it on his penis, and a second in which M.J.G. reported that

another student told her to pull her pants down, blew on her stomach, and placed his penis on her

pelvic area. The defendant investigated these claims, determined the first was unfounded, and

instituted a safety plan after the second. The Third Circuit found that "no reasonable jury could

find that the School Defendants caused either the March 2015 or February 2016 incidents with RD to occur and that their responses after each were clearly unreasonable." *Id.* at *5. The Third Circuit continued:

> Even if other steps could have been taken, no reasonable juror could conclude that the School Defendants were deliberately indifferent to the incidents given the detailed safety plan they were prepared to implement. ...   Furthermore, the Supreme Court directs us to give some deference to how schools handle events on school grounds and to take care not to dictate that school officials may "avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action."

*Id.* at *5, quoting *Davis*, at 648.

There are no facts set forth in Plaintiff's Amended Complaint to sustain Plaintiff's burden to show a plausible claim that the School was deliberately indifferent to sexual harassment by R.H.  The School had no reason to believe that the incident with R.H. was likely to take place, was unaware of any prior reports by A.J. of harassment, and acted immediately when rumors of an incident were discovered.   As in *M.J.G.*, the response by the School was objectively reasonable in light of the circumstances.   A thorough investigation was conducted. A.J.'s guardian was offered, but declined, the option of pressing criminal charges, and steps were taken to prevent any further harassment from taking place.   The School took affirmative steps to address the issue, even when A.J. was unwilling to admit that the incident even had taken place. On these facts, the Court must conclude that Plaintiff cannot sustain a claim that the School was deliberately indifferent or clearly unreasonable in its handling of the incident, and dismiss Plaintiff's Title IX claim.

b.   **Plaintiff's Amended Complaint Fails to State a Plausible Claim Under 42 U.S.C. § 1983**

Count II of Plaintiff's Amended Complaint alleges a claim for violations of A.J.'s Fourteenth Amendment rights under 42 U.S.C. § 1983. However, as Defendants cannot be held liable under § 1983 for the intentional criminal acts of a third party, Plaintiff's § 1983 claim must be dismissed.

In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the Supreme Court held that:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression. Its purpose was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes.
>
> Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. ... As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 195-96 (*internal citations and quotation marks omitted*). This general rule is subject to only two (2) narrow exceptions. As noted by the Third Circuit in *Ye v. United States*, 484 F.3d

634 (3rd Cir. 2007), "There are, however, two exceptions to this rule: the 'special relationship'

exception and the 'state-created danger' exception."

Initially, Plaintiff cannot establish the existence of any "special relationship."  As noted

in *DeShaney*:

> [W]hen the State takes a person into its custody and holds him
> there against his will, the Constitution imposes upon it a
> corresponding duty to assume some responsibility for his safety
> and general well-being.  The rationale for this principle is simple
> enough: when the State by the affirmative exercise of its power so
> restrains an individual's liberty that it renders him unable to care
> for himself, and at the same time fails to provide for his basic
> human needs – *e.g.,* food, clothing, shelter, medical care, and
> reasonable safety – it transgresses the substantive limits on state
> action set by the Eighth Amendment and the Due Process Clause.
> The affirmative duty to protect arises not from the State's
> knowledge of the individual's predicament or from its expressions
> of intent to help him, but from the limitation which it has imposed
> on his freedom to act on his own behalf.  In the substantive due
> process analysis, it is the State's affirmative act of restraining the
> individual's freedom to act on his own behalf – through
> incarceration, institutionalization, or other similar restraint of
> personal liberty – which is the deprivation of liberty triggering the
> protections of the Due Process Clause, not its failure to act to
> protect his liberty interests against harms inflicted by other means.

*Id.* at 199-200.  The Third Circuit has been clear that this exception does not apply to public

schools.  In *D.R. by L.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364 (3rd

Cir. 1992), the Third Circuit addressed a similar claim in which public school students alleged

that they were molested by other students.  In ruling that the "special relationship" exception did

not apply, the Third Circuit was clear that, "Our court has read *DeShaney* primarily as setting out

a test of physical custody." *Id.* at 1370.  Working from this assumption, the court continued:

> Here, it is the parents who decide whether … education will take
> place in the home, in public or private schools or, as here, in a
> vocational-technical school.  For some, the options may be limited
> for financial reasons.  However, even when enrolled in public

school parents retain the discretion to remove the child from classes as they see fit.

\* \* \*

By requiring D.R to attend assigned classes at Middle Bucks as part of her high school educational program, and authorizing officials to engage in disciplinary control over the students, the school defendants did not restrict D.R.'s freedom to the extent that she was prevented from meeting her basic needs. Thus, the school defendants' authority over D.R. during the school day cannot be said to create the type of physical custody necessary to bring it within the special relationship noted in *DeShaney*, particularly when their channels for outside communication were not totally closed.

*Id.* at 1371-72.  This continues to be the law in the Third Circuit.  No matter how Plaintiff attempts to re-frame the issue, Defendants cannot be held liable for the criminal acts alleged against R.H.  As such, any claim premised on the special relationship exception must fail.

Neither can Plaintiff succeed on a "state-created danger" theory.  "Liability under the state-created danger theory is predicated upon the states' affirmative acts which work to plaintiffs' detriment in terms of exposure to danger." *D.R.*, at 1374.  The Third Circuit has set forth the following elements to establish a state-created danger:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

- 14 -

*Bright v. Westmoreland County,* 443 F.3d 276, 281 (3rd Cir.2006).   In this case, Plaintiff has not

pled any facts which would support a claim that any affirmative act by any Defendant increased

A.J.'s risk of exposure to harm, or that such increased exposure actually led to the harm alleged.

Instead, Plaintiff cites to the alleged lack of grievance procedures.   This is insufficient to

establish a claim, as the exception requires affirmative action.

The Third Circuit has explained that the requirement for affirmative action "ensures that

defendants are only liable for misuse of state authority, rather than a failure to use it.  Because

there is inherent difficulty in drawing a line between an affirmative act and a failure to act, we

have found it useful to evaluate whether the state actor's exercise of authority resulted in a

departure from the status quo." *Gayemen v. School District of Allentown*, 712 Fed. Appx. 218,

220 (3rd Cir. 2017) (*internal citations and quotation marks omitted*).  In *Gayemen*, the plaintiff

alleged that the school district had failed to take appropriate steps to address gang violence in

schools.  The Third Circuit rejected this argument, holding:

> As Gayemen himself puts it, he alleges "the failure of the School
> District to take appropriate steps to address the student affiliated
> gang violence."  But that is just what the Due Process Clause does
> not protect.  The allegation does not entail any departure from the
> status quo.  Gayemen has not identified any action that rendered
> him more vulnerable to danger than had the state not acted at all.

*Id.* at 220-21 (*internal citations and quotation marks omitted*).   Plaintiff alleges only that

Defendants failed to install policies and procedures that could have prevented the incident with

R.H.  As a matter of law, such failure, even if true, would not constitute an affirmative act.

Further, Plaintiff has not pled any conduct that meets the standard of shocking the

conscience.  This standard is far higher than anything set forth in the Amended Complaint.  In

*D.R.*, there were allegations that, before a student was sexually assaulted by another student, she

told a school administrator that a student was trying to force her into a bathroom to engage in

sexual conduct, and that nothing was done  The Third Circuit held:

> We readily acknowledge the apparent indefensible passivity of at
> least some school defendants under the circumstances. Accepting
> the allegations as true, viz., that one school defendant was advised
> of the misconduct and apparently did not investigate, they show
> nonfeasance but they do not rise to the level of a constitutional
> violation.

*Id.* at 1376.  If failing to act when a student reports an imminent threat of a sexual assault cannot

support a claim under § 1983, then there can be no reasonable dispute that Plaintiff's allegations

fall far short of this requirement.  As such, Plaintiff's § 1983 claim must be dismissed.

    *c.*    ***The Individual Defendants Are Entitled to Qualified Immunity***

As the allegations of the Amended Complaint do not support a claim that any of the

individual Defendants violated any of A.J.'s clearly-established constitutional rights, the doctrine

of qualified immunity protects them not only from liability, but from legal action.

"The doctrine of qualified immunity protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223,

129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).  "Because qualified immunity is an immunity

from suit rather than a mere defense to liability[,] it is effectively lost if a case is erroneously

permitted to go to trial." *Ibid.*  Accordingly, "we repeatedly have stressed the importance of

resolving immunity questions at the earliest possible stage in litigation." *Ibid.*  The Supreme

Court has adopted a two-part test to analyze the defense of qualified immunity:

> First, a court must decide whether the facts that a plaintiff has
> alleged or shown make out a violation of a constitutional right.
> Second, if the plaintiff has satisfied this first step, the court must
> decide whether the right at issue was "clearly established" at the
> time of defendant's alleged misconduct.  Qualified immunity is
> applicable unless the official's conduct violated a clearly
> established constitutional right.

*Id.* at 816-17. *Pearson* modified the court's prior decision in *Saucier* v. *Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), by ruling that the Court may look to the second element of the test for qualified immunity first. "[A]s the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

In this case, Plaintiff cannot establish that any of the individual Defendants violated any clearly established right. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. The United States Supreme Court has clarified that:

> [a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question ***beyond debate***.

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011) (*internal quotations and citations omitted; emphasis added*). Furthermore, as this Court of Appeals has held, "we make clear that a qualified immunity determination must be made in light of the specific factual context of the case." *Thomas v. Independence Township*, 463 F. 3d 285, 289 (3rd Cir. 2006). The key inquiry is whether "officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be unlawful." *Giuffre v. Bissell*, 31 F.3d 1241, 1255 (3rd Cir. 1994), *citing Abdul-Akbar v. Watson*, 4 F.3d 195, 202 (3rd Cir. 1993).

The Third Circuit has held that "broad propositions of law that cannot guide a court in determining whether a constitutional right is clearly established." *Thomas*, at 300. The Court continued that, "If such broad propositions of law were sufficient for purposes of the qualified

immunity analysis, plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Ibid.*

> A right is "clearly established" if, at the time of the alleged deprivation, the contours of the right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Crucial to the "clearly established" inquiry is the level of generality at which the right is defined. A constitutional right is not "clearly established simply because of the existence of a broad imperative like the one against unreasonable seizures, but nor must there be a case directly on point if existing precedent has placed the statutory or constitutional question beyond debate. Rather, the asserted right must be sufficiently bounded that it gives practical guidance to officials on the ground. Put another way, the right asserted cannot be so abstract that *any* transgression violates a clearly established right, thereby evaporating the balance between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties. The "ultimate question" in the qualified immunity analysis is whether the defendant had fair warning that his conduct deprived his victim of a constitutional right.

*Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 326 (3rd Cir. 2014) (*internal citations and quotations omitted, emphasis in original*). In other words, "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3rd Cir. 2012), *citing Williams v. Bitner*, 455 F.3d 186 (3rd Cir. 2006). In *Zaloga v. Borough of Moosic*, 841 F.3d 170, *13 (3rd Cir. 2016), the Third Circuit held:

> [I]t is not sufficient to conclude, as the District Court did in this case, that the second *Saucier* prong is satisfied because there is a well-known right against government retaliation for exercising one's right to free speech. That put the question of whether the "clearly established" standard had been met at much too high a level of abstraction. Instead, we must attend to context; we need to consider the state of the existing law at the time of the alleged violation and the circumstances confronting [the defendant] to

- 18 -

determine whether a reasonable state actor could have believed his
conduct was lawful.

*Zaloga*, at 175.

As set forth above, there is no clearly-establish precedent that a public school student has a constitutional right to protection from a sexual assault from another student. To the contrary, the Supreme Court and the Third Circuit have expressly and consistently rejected this theory, even under circumstances with far more serious allegations. In May 2016, there was no basis for any individual to believe that the actions alleged against him or her could possibly lead to a claim for constitutional violations. With regard to Mr. Gordon, Plaintiff alleges only that he was "responsible for all customs, policies and procedures of Mastery and the School, including with regard to the requirements of Title IX."[25] There is no explanation for how Mr. Gordon committed any act that possibly could have led to the assault on A.J. Ms. Meserve is alleged only to be the Principal of Pastorius-Richardson Elementary School. There are no allegations of any specific conduct by Ms. Meserve with regard to claims of constitutional violations. Mr. Langston is alleged to have conducted an investigation into the incident after the fact. There is no reason that Mr. Langston reasonably could have believed that this would violate A.J.'s constitutional rights. Finally, Plaintiff alleges that Mr. Patron was "responsible for ensuring Mastery and the School's compliance with the requirements of Title IX."[26] Once again, Plaintiff fails to set forth any facts to explain how any act taken by Mr. Patron violated Plaintiff's clearly established constitutional rights. As such, each of the individual Defendants must be entitled to qualified immunity with regard to Plaintiff's § 1983 claim.

---

[25] Exhibit "A", at ¶ 5.
[26] Exhibit "A", at ¶ 8.

> **d.** **Plaintiff's Amended Complaint Fails to State a Plausible Claim for Intentional Infliction of Emotional Distress**

Count III of Plaintiff's Amended Complaint purports to set forth a claim for Intentional Infliction of Emotional Distress against the individual Defendants. However, as Plaintiff has failed to allege any conduct sufficient to support this claim, judgment should be entered in favor of Defendants.

"A claim for intentional infliction of emotional distress under Pennsylvania law requires four elements: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Miller v. Comcast*, 724 Fed. Appx. 181, 182 (3rd Cir. 2019) (*internal quotation marks omitted*). The Court serves as a gatekeeper to determine whether the Amended Complaint contains sufficient allegations to establish a plausible claim of extreme and outrageous conduct. *See e.g. Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1274 (3rd Cir. 1979) ("The court must determine, as a matter of law, whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct.") "Liability on an intentional infliction of emotional distress claim 'has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Reedy v. Evanson*, 615 F.3d 197, 231 (3rd Cir. 2010), *quoting Field v. Philadelphia Electric Co.,* 388 Pa. Super. 400, 565 A.2d 1170, 1184 (1989). Plaintiff's Amended Complaint falls far short of this standard.

Plaintiff's claim is based on the following conclusory allegations:

> 72. Defendants acted recklessly or intentionally by discriminating against A.J. failing to timely and appropriately responding to threats to A.J. safety. [all *sic*]

> 73.    Defendants acted recklessly or intentionally by allowing for
> and facilitating the distribution and publication of the video
> depicting the sexual assault of A.J.[27]

Plaintiff's Amended Complaint is completely devoid of any factual allegations to support these spurious conclusions.   Initially, Plaintiff's Amended Complaint fails to identify any threat to A.J.'s safety that was known (or even should have been known) by any of the individual Defendants.   To the contrary, Plaintiff alleges that the incident with R.H. took place in an abandoned auditorium, and that A.J. never spoke to anyone about it.   It is unfathomable that any of the individual Defendants could have taken any action to prevent the assault.   Further, as set forth in the Amended Complaint, the individuals did respond, first to the rumors of an incident, and then to the discovery of the video.   Mr. Langston self-initiated an investigation, and then took reasonable actions based on information he discovered.

With regard to the video, Plaintiff's claims are equally baseless.   There was no distribution or publication of the video.   Plaintiff has not set forth any facts to support a claim that Mr. Langston or anyone else showed a copy of the video to anyone outside the immediate investigation.   There is nothing in these actions that comes close to the level of conduct necessary to constitute "extreme and outrageous" behavior.   To the contrary, these actions we wholly reasonable under the circumstances and were taken as part of a responsible investigation. As such, Plaintiff's claim for Intentional Infliction of Emotional Distress is without merit, and judgment should be entered in favor of all individual Defendants.

---

[27] Exhibit "A", at ¶¶ 72-73.

e. **_Plaintiff's Amended Complaint Fails to State a Plausible Claim for Breach of Fiduciary Duty_**

Count IV of Plaintiff's Amended Complaint purports to assert a claim against the individual Defendants for Breach of Fiduciary Duty. This claim is based on the following conclusory allegations:

> 78. A fiduciary relationship exists between the individual defendants and A.J., as the individual defendants exercise overmastering influence over A.J.
>
> 79. A.J. was in a position of dependence and place her trust in the individual defendants to maintain a safe and discrimination-free school environment.
>
> 80. Individual Defendants had a fiduciary duty and obligation to act in the best interests of A.J., including but not limited to, not discriminating against A.J., ensuring A.J.'s safety at school and timely and appropriately responding to threats to A.J.'s safety.
>
> 81. The Individual Defendants intentionally and recklessly breached their fiduciary duty to A.J. by knowingly discriminating against A.J., failing to ensure A.J.'s safety at school and failing to timely and appropriately respond to threats to A.J.'s safety and well-being, including the sexual assault and the distribution and publication of the video.[28]

Initially, as noted above, there are no factual allegations to support a claim that: 1) anyone at the School had knowledge of any threat to A.J.'s safety prior to May 27, 2016; or 2) that any individual Defendant distributed or published the video. As such, these theories should be rejected out of hand. Further, the remaining theories fail to recognize the nature of a claim for breach of fiduciary duty.

In Pennsylvania:

> To establish a breach of a fiduciary duty, the plaintiff must establish: (1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all matters for which he was employed, or negligently or intentionally failed to use reasonable care in carrying out his duties; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit, or to use the skill and knowledge

---

[28] Exhibit "A", at ¶¶ 78-81.

- 22 -

demanded of him by law, was a real factor in bringing about the
plaintiff's injuries.

*Anderson v. Abington Heights School District*, 2017 WL 6327572, *15 (M.D. Pa. December 11,

2017).  In other words:

> A confidential relationship between two parties can give rise to
> fiduciary duties owed by one to the other.   In some cases, as
> between trustee and *cestui que* trust, guardian and ward, attorney
> and client, and principal and agent, the existence of a confidential
> relationship is a matter of law.
>
> In other cases, where these relationships do not exist, confidential
> relations may still arise based on the facts and circumstances
> apparent on the record.  Both our Supreme Court and other courts
> have recognized that those who purport to give advice in business
> may engender confidential relations if others, by virtue of their
> own weakness or inability, the advisor's pretense of expertise, or a
> combination of both, invest such a level of trust that they seek no
> other counsel.
>
> In any event, the essence of a confidential relationship is trust and
> reliance on one side, and a corresponding opportunity to abuse that
> trust for personal gain on the other.  Accordingly, a confidential
> relationship appears when the circumstances make it certain the
> parties do not deal on equal terms, but, on the one side there is an
> overmastering influence, *or,* on the other, weakness, dependence or
> trust, justifiably reposed.
>
> The party in whom the trust and confidence are reposed must act
> with scrupulous fairness and good faith in his dealings with the
> other and refrain from using his position to the other's detriment
> and his own advantage.

*Welley v. Albert Einstein Medical Center*, 51 A.3d 202, 218 (Pa. Super. 2012).  "Additionally, in

order to breach a fiduciary duty, the dominant party must act for his or her own personal gain or

to his or her own advantage."  *Ibid.*  Plaintiff's Amended Complaint is devoid of any factual

allegations to suggest that any of the individual Defendants acted for his or her personal gain or

benefit.  Without this key element, no claim for breach of fiduciary duty can be stated.  There is

no basis to suggest that any of the actions alleged against the individual Defendants constituted the abuse of a confidential relationship.   Further, Plaintiff's Amended Complaint does not contain any factual averments to establish that any act by any of the individual Defendants "was a real factor in bringing about" A.J.'s injuries.   Instead, there can be no honest dispute that the injuries alleged by A.J. were solely the result of the actions of R.H., both in the assault itself and in the sharing of the video that he surreptitiously recorded.   Allegations regarding the subsequent investigation and grievance policies have no connection with the injury claimed.   As such, no claim for breach of fiduciary can exist, and judgment should be entered in favor of Defendants.

In addition, despite the conclusory claims in the Amended Complaint, Plaintiff cannot demonstrate the type of overmastering required to state a claim for breach of fiduciary duty.   In *Basile v. H&R Block, Inc.*, 617 A.2d 212, 225 (Pa. 2012), the Pennsylvania Supreme Court explained what this term means:

> [T]he term "overmastering influence" itself implies a relational aspect – particularly in terms of social phenomena such as mass advertising, what may be couched as "overmastering" as to one individual will not have the same impact on others. … [T]he Court has maintained this relational focus in other of its descriptions of a confidential relationship.   Simply put, in the absence of actual coercion, overmastering influence does not exist in the abstract.

(*internal citation omitted*).   Plaintiff's Amended Complaint does not contain any averments of fact to suggest the level of coercion required to establish the existence of overmastering.   In such absence, no claim for breach of fiduciary duty can exist.

### f.   *The Individual Defendants Are Entitled to Immunity Under the Political Subdivision Tort Claims Act*

Even if Plaintiff's Amended Complaint did set forth a plausible claim for either Intentional Infliction of Emotional Distress or Breach of Fiduciary Duty, such claims are barred by the Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8541, *et seq.*   Pursuant to 42 Pa. C.S.

8541, "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." None of the exceptions set forth in 42 Pa. C.S. § 8542(b) apply in this case. Claims for Intentional Infliction of Emotional Distress and Breach of Fiduciary Duty are both covered by the Tort Claims Act. *See e.g. Davenport v. Pottstown Hospital Company, LLC*, 2017 WL 4467500, *15 (E.D. Pa. October 6, 2017) ("We dismiss Mr. Davenport's claims for intentional infliction of emotional distress against the Police Department because Mr. Davenport's claim is prohibited by the Pennsylvania Political Subdivision Tort Claims Act."); *Lewis v. City of Philadelphia*, 2015 WL 4461579, *3 (E.D. Pa. July 20, 2015) ("A fiduciary duty claim is a tort claim subject to the PSTCA.")

This immunity also applies to employees of a local agency.[29] Pursuant to 42 Pa. C.S. § 8545:

> An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

This immunity for employees is abrogated under very limited circumstances. Pursuant to 42 Pa. C.S. § 8550:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

---

[29] A charter school qualifies as a local agency under the Tort Claims Act. *See e.g. Warner v. Lawrence*, 900 A.2d 980, 989 (Pa. Cmwlth. Ct. 2006) ("[W]e hold that the trial court was correct in … finding that [World Communications Charter School] is entitled to governmental immunity under the Tort Claims Act.")

There is no basis for Plaintiff to assert that any of the individual Defendants acted in such a way as to constitute a crime, actual fraud, or actual malice. The only question, therefore, is whether there has been any plausible claim for willful misconduct. Based on the allegations of the Amended Complaint, the clear answer to this question is no.

As the Pennsylvania Commonwealth has held:

> Willful misconduct, for the purposes of tort law, has been defined by our Supreme Court to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied. *Evans v. Philadelphia Transportation Company,* 418 Pa. 567, 212 A.2d 440 (1965). In other words, the term "willful misconduct" is synonymous with the term "intentional tort".

*King v. Breach*, 540 A.2d 976, 981 (Pa. Cmwlth. Ct. 1988). "To prove willful misconduct, a plaintiff must establish that the actor desired to bring about the result that followed, or at least it was substantially certain to follow, *i.e.,* specific intent." *Robbins v. Cumberland County Children and Youth Services*, 802 A.2d 1239, 1253 (Pa. Cmwlth. Ct. 2002). Under this standard, there is no reasonable argument that any of the allegations against the individual Defendant suggest a plausible claim of willful misconduct. To the contrary, Plaintiff's allegations barely reach the level of simple negligence. Plaintiff objects to the scope of policies and procedures, and the investigation conducted by Mr. Langston. Defendants can only assume that Plaintiff will not argue that any of the individual Defendants desired to bring about a sexual assault on a student, or that such an assault was substantially certain to follow based on any of the alleged conduct. As such, Plaintiff cannot overcome the immunity granted by § 8545 of the Tort Claims Act, and judgment must be entered in favor of the individual Defendants on Counts III and IV of Plaintiff's Amended Complaint.

    g.     *Plaintiff's Amended Complaint Fails to Set Forth a Plausible Claim for Punitive Damages*

While Plaintiff's Amended Complaint makes a demand for punitive damages, the facts alleged in the Amended Complaint fall far short of the relevant standards for such damages to be available.

Initially, Title IX does not permit an award of punitive damages. *See e.g. E.N. v. Susquehanna Township School District*, 2010 WL 4853700, *20 (E.D. Pa. November 23, 2010) ("The availability of punitive damages in a Title IX action has never been decided by the Supreme Court or any court of appeals, however the court concludes that punitive damages are not available in private actions to enforce Title IX.") Title IX does not contain an express private right of action. However, in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998), the Supreme Court found that there was an ***implied*** private cause of action. As the Supreme Court has made clear, "The general rule today is that no punitive damages are allowed unless expressly authorized by statute." *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 260 n.21, 101 S. Ct. 2748, 69 L.Ed.2d 616 (1981). As there is no express authorization for the imposition of punitive damages in a private cause of action under Title IX, there can be no implied right thereto. As such, Plaintiff's claims for punitive damages in Count I must be stricken.

With regard to Plaintiff's § 1983 claim, the Schools may not be subject to a claim for punitive damages. As noted in *Luu v. Esterly*, 367 F. Supp. 3d 335, 349 (E.D. Pa. 2019), "For purposes of § 1983, courts in this district have considered charter schools … municipalities, and therefore not liable for punitive damages." With regard to the individual Defendants, the Third Circuit has explained:

> Punitive damages in § 1983 cases are available where the
> defendants have acted with a reckless or callous disregard of, or
> indifference to, the rights and safety of others.  However, punitive
> damages in general represent a limited remedy, to be reserved for
> special circumstances.   Despite its utility as a deterrent, the
> punitive damage remedy must be reserved, we think, for cases in
> which the defendant's conduct amounts to something more than a
> bare violation justifying compensatory damages or injunctive
> relief.

*Keenan v. City of Philadelphia*, 983 F.2d 459, 469-70 (3rd Cir. 1992).  With regard to the state

law claims, "[P]unitive damages are proper when a person's actions are of such an outrageous

nature as to demonstrate intentional, willful, wanton or reckless conduct, and are awarded to

punish that person for such conduct."  *SHV Coal v. Continental Grain Company*, 587 A.2d 702,

704 (Pa. 1991).  The allegations of the Amended Complaint do not establish any conduct close to

that necessary to support a claim for punitive damages.

The Amended Complaint does not identify ***any*** affirmative act taken by any of the

individual Defendants that reasonably could be construed as to have placed A.J. at risk of injury,

let alone any act taken with the *mens rea* necessary to justify punitive damages. Mr. Gordon and

Mr. Patron are not alleged to have had direct involvement in the incident with A.J., except for

being responsible for various policies, none of which can reasonably be considered to have

caused the incident.  Mr. Langston only became involved in the incident after it had occurred, in

an attempt to identify the nature of the incident, the parties involved, and whether the incident

was consensual.  Ms. Meserve only became involved after Mr. Langston had identified A.J. in

the video.  None of these actions suggest intentional, willful, or reckless conduct necessary to

plead a claim for punitive damages.  As such, the claim should be stricken.

## V.    Conclusion

In light of the foregoing, Plaintiff's Amended Complaint fails to set forth a plausible claim under any of the legal theories set forth.   Based on the allegations of the Amended Complaint, the record is clear that no act or omission of any Defendant led to the injuries that Plaintiff is claiming in this matter.   Further, the individual Defendants are entitled to both qualified and statutory immunity to Plaintiff's claims.   Finally, Plaintiff's Amended Complaint fails to state any claim for punitive damages.   As such, judgment on the pleadings should be entered in favor of all Defendants and against Plaintiff on all counts of the Amended Complaint.

Respectfully submitted,

DEASEY, MAHONEY & VALENTINI, LTD.

By:   _____
Francis J. Deasey, Esquire
Pa. Attorney Identification No. 25699
Rufus A. Jennings, Esquire
Pa. Attorney Identification No. 93030
1601 Market Street, Suite 3400
Philadelphia, PA 19103
Phone:  (215) 587-9400
Fax:     (215) 587-9456
Email:  fdeasey@dmvlawfirm.com
            rjennings@dmvlawfirm.com

Date: 7/23/19

# Exhibit
# "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROSEMARY ROUSSAW                          :
As Legal Guardian of A.J., A Minor        :
6316 E. Wister St.                        :       **CIVIL ACTION**
Philadelphia, Pennsylvania 19138          :
                                          :       **NO. 2019-cv-1458-RBS**
                      **Plaintiff,**      :
                                          :
                                          :
              **v.**                      :       **JURY TRIAL DEMANDED**
                                          :
MASTERY CHARTER HIGH SCHOOL               :
5700 Wayne Avenue                         :
Philadelphia, PA 19144                    :
                                          :
and                                       :
                                          :
MASTERY CHARTER SCHOOL                    :
PASTORIUS-RICHARDSON ELEMENTARY           :
f/k/a   FRANCIS D. PASTORIUS-             :
          MASTERY CHARTER SCHOOL          :
5650 Sprague Street                       :
Philadelphia, PA 19138                    :
                                          :
and                                       :
                                          :
SCOTT GORDON, in his official and individual :
capacities                                :
5700 Wayne Avenue                         :
Philadelphia, PA 19144                    :
                                          :
and                                       :
                                          :
HILLARY MESERVE, in her official and      :
individual capacities                     :
5650 Sprague Street                       :
Philadelphia, PA 19138                    :
                                          :
and                                       :
                                          :
ERIC LANGSTON, in his official and individual :
capacities                                :
5650 Sprague Street                       :
Philadelphia, PA 19138                    :
                                          :

1

and                                                        :
                                                           :
**MICHAEL PATRON, in his official and**                    :
**individual capacities**                                  :
**5700 Wayne Avenue**                                      :
**Philadelphia, PA 19144**                                 :
                                                           :
                              **Defendants.**              :
_____                   :

### AMENDED COMPLAINT[1]

### NATURE OF THIS ACTION

1.        On May 27, 2016, a thirteen year-old girl in 7th grade, A.J., was sexually assaulted

by another student at Mastery Charter School Pastorius-Richardson Elementary in Philadelphia.

A video of the sexual assault was circulated among students and staff at the School.  Despite the

fact that there had been multiple previous incidents of sexual harassment and assault at the

School, the United States Department of Education, which investigated the incident, determined

that the School failed to enact and employ even the most basic of safeguards and procedures to

prevent and respond to such incidents, as required by federal law.  The School and its

administrators sought to deflect blame for their own failures and made the determination, based

on a bogus and faulty investigation, that the sexual incident was consented to by the thirteen

year-old girl and blamed her for the incident, further victimizing her in the process.  As a result,

A.J.'s grandmother and legal guardian, Rosemary Roussaw, brings this lawsuit against

Defendants and seeks damages for the severe and devastating harm caused to her granddaughter,

pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, the Civil Rights

Act of 1866, 42 U.S.C. §1983, as well as common law claims for intentional infliction of

emotional distress and breach of fiduciary duty.

---

[1] This Amended Complaint includes the same factual allegations averred in the initial Complaint filed on April 5,
2019, to which Defendants filed an Answer on May 31, 2019.  This Amended Complaint is being filed pursuant to
the Court's Orders of June 20 and June 27, 2019 for the sole purpose of correcting the names of the defendants.

## PARTIES

2.      Plaintiff Rosemary Roussaw ("Ms. Roussaw" or "Plaintiff") is the legal guardian

and grandmother of A.J., a minor, residing at 6316 East Wister Street, Philadelphia, PA 19138.

A.J. was born on February 28, 2003 and, at all times relevant hereto, was a thirteen (13) year old,

female, seventh grade student at Mastery Charter School Pastorius-Richardson Elementary.

3.      Defendant, Mastery Charter High School (hereinafter "Mastery"), is a nonprofit

corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

Mastery is the owner and operator of 24 charter schools in Pennsylvania and New Jersey, serving

approximately 14,000 students and employing more than 1,700 employees.  Its principal place of

business is located at 5700 Wayne Avenue, Philadelphia, PA 19144.

4.      Defendant, Mastery Charter School Pastorius-Richardson Elementary, formerly

known as Francis D. Pastorius- Mastery Charter School (hereinafter "Pastorius" or "the

School"), is a nonprofit corporation organized and existing under the laws of the Commonwealth

of Pennsylvania.  At all times relevant hereto, Pastorius had approximately 600 students in

kindergarten through 8th grade and was/is owned and operated by Defendant Mastery Charter

High School.   Pastorius is located at 5650 Sprague Street, Philadelphia, PA 19138.

5.      Defendant, Scott Gordon, is an adult individual residing within the

Commonwealth of Pennsylvania who, at all times relevant hereto, served as Chief Executive

Officer of Defendant Mastery Charter High School and was acting under color of state law.  As

CEO of Mastery, at all times relevant hereto, Defendant Gordon oversaw and was primarily

responsible for all customs, policies and procedures of Mastery and the School, including with

respect to the requirements of Title IX.

6.      Defendant, Hillary Meserve, is an adult individual residing within the Commonwealth of Pennsylvania who, at all times relevant hereto, served as Principal of Defendant Pastorius and was acting under color of state law.

7.      Defendant, Eric Langston, is an adult individual residing within the Commonwealth of Pennsylvania who, at all times relevant hereto, served as Principal and/or Assistant Principal of Defendant Pastorius and was acting under color of state law.

8.      Defendant, Michael Patron ("Patron"), is an adult individual residing within the Commonwealth of Pennsylvania who, at all times relevant hereto, served as Director of Compliance of Defendant Mastery Charter High School and was acting under color of state law. At all times relevant hereto, Patron was responsible for ensuring Mastery and the School's compliance with the requirements of Title IX.

9.      At all times relevant hereto, Ms. Roussaw was also employed as a crossing guard outside of the School.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over Plaintiffs' claims for relief under 28 U.S.C. §§1331, 1337, 1343, 2201, and 2202, since those claims are based in part on violations of and arise under the laws of the United States, including the United States Constitution, 42 U.S.C. § 1983, and Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, and its implementing regulation, 34 C.F.R. Part 106.

11.     Jurisdiction is also invoked pursuant to 28 U.S.C. §1367 granting this Court supplemental or pendent jurisdiction over the state law claims asserted under the common law of the Commonwealth of Pennsylvania, including legal claims for breach of fiduciary duty and intentional infliction of emotional distress, because the state claims and federal claims are so

interrelated that they are the same case or controversy under Article III of the United States

Constitution.

12.     Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391 (b)

and (c) since Plaintiffs and Defendant reside in the Eastern District of Pennsylvania and since a

substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Eastern

District of Pennsylvania.

## THE SEXUAL ASSAULT

13.     On May 27, 2016, at Pastorius, A.J. was approached by a male, 15 year-old

student in eighth grade ("R.H."), in the School auditorium.  R.H. asked A.J. if he could have sex

with her, to which A.J. responded: "No."  Thereafter, R.H. persisted to which A.J. responded "I

can't.  I never did this before."  R.H. continued to persist by saying "it's ok."  R.H. then pulled up

A.J.'s dress, pulled down her underwear and had sexual intercourse with A.J.

14.     A.J. did not consent to having sexual intercourse with R.H. through her words or

conduct and, at the age of 13, did not otherwise have the legal capacity to give her consent.

15.     Following the sexual assault, R.H. threatened A.J. and told her that "you better

not tell anybody" about this.

16.     Unbeknownst to A.J. at the time of the sexual assault, R.H. recorded a video on

his cell phone depicting him having sexual intercourse with A.J.

17.     A.J. was fearful and ashamed and did not say anything to anyone about the sexual

assault by R.H.

18.     Defendant Langston, the learned of the existence of the video on May 27, 2016-

the same day that the sexual assault occurred.

5

19.     Defendant Langston claimed to have conducted an investigation of the video upon learning of its existence, but he did not contact Ms. Roussaw about the video and the sexual encounter involving A.J. until June 9, 2016, *thirteen days after* he learned of the video.

20.     The video was distributed among multiple students at the School, without A.J. or Plaintiff's knowledge.

21.     The School's Principal, Defendant Hillary Meserve, admitted that she learned of the sexual incident "about a week later" when she was shown "a video of the incident on a student's cell phone that Mr. Langston showed me."

22.     On June 9, 2016, Ms. Roussaw was called to come to the School to meet with Defendant Langston.  When she arrived in the School, she witnessed Defendant Langston showing the video on his cell phone to other individuals that were gathered around him.  He then showed the video to Ms. Roussaw and told her that he had been in possession of the video for "about a week."  Ms. Roussaw was devastated and distraught.  Defendant Langston then brought Ms. Roussaw into a meeting in a conference room at the School with A.J., R.H., R.H's father, Ms. Roussaw's two daughters.  Ms. Roussaw was questioned at the School by police officers who were called in by the School to investigate.

23.     Defendants callously dismissed the incident as "consensual," notwithstanding the fact that A.J. was only thirteen years old and stated that she told R.H. "no."

24.     Despite Defendants' conclusion that A.J. had consented to sexual intercourse (even though she was only thirteen years old and stated that she told R.H. "No"), Defendants acknowledged that A.J. did not consent to the videotaping.

6

25.     Although she was a victim of sexual assault, Defendants Langston and Meserve determined that A.J. should be suspended and was not permitted to return to School for the remainder of the school year.

26.     A.J. was forced to switch schools and is now in tenth grade at Martin Luther King, Jr. High School in Philadelphia.

### PRIOR SEXUAL ASSAULTS AT MASTERY

27.     Prior to the sexual assault of A.J., there were multiple sexual harassment and assault incidents at Mastery Schools that were known to Defendants. going back to 2008 or earlier.

28.     In 2008, as reported by the *Philadelphia Inquirer*, two eighth grade students engaged in sexual intercourse in the stairwell of the school, resulting in the expulsion of the male student.  It was reported that the male student's mother "said a school employee told her that sexual activity is so rampant among some students that girls have been found with sexual contracts stipulating to whom they wanted to lose their virginity."

29.     Earlier in 2016, only months prior to the sexual assault on A.J., a 13 year-old, seventh grade student was sexually assaulted in the lunchroom at Pastorius Elementary.  This incident was known to other students, staff and members of the School community.

30.     Despite the multitude of incidents of sexual misconduct and violence occurring at the School, all of which were known to other students, staff and members of the School community, Defendants failed to take prompt and effective steps to address the sexual violence among its children and the hostile environment to which they were exposed.

### INVESTIGATION OF THE SEXUAL ASSAULT BY THE U.S. DEPARTMENT OF EDUCATION, OFFICE OF CIVIL RIGHTS

31.     The United States Department of Education, Office of Civil Rights (OCR) conducted an investigation of the sexual assault against A.J. at the School, and identified multiple significant deficiencies and areas of non-compliance with Title IX.

32.     OCR determined that at the time of the sexual assault on A.J., Defendants did not have a Title IX Coordinator; did not have any grievance procedures as required by Title IX; did not have any policies or procedures for investigating reports of sexual assault or discrimination at the School; did not have any policies or procedures in place to address sexual assault or discrimination apart from its normal disciplinary policies and procedures; did not have any policies or procedures in place for reporting about sexual assault or discrimination at the School; did not provide any training to its students, administration. teachers and staff with respect to sexual assault or discrimination as required by Title IX; and did not maintain records of incidents of sexual assault or harassment.

33.     OCR further determined, in part, the following:

> Our investigation found that there were two separate incidents that constituted conduct of a sexual nature that should have triggered an investigation under Title IX: (1) the sexual encounter in the auditorium between the Student [A.J.] and the Responding Party [R.H.]; and (2) the Responding Party videotaping the sexual encounter in the auditorium without the Student's consent. *Our investigation found, however, that neither the Principal nor the Assistant Principal invoked Title IX during their investigation into each of these incidents.*
> Our investigation found that the video constituted conduct of a sexual nature and that the Assistant Principal immediately took action to investigate the video once he had notice of it. Mastery's written statement to OCR and the Student's witness statement indicate that the student did not consent to being videotaped; thus the evidence shows that the videotaping was unwelcome. However, *the evidence does not show that the School made a determination regarding whether the video created a sexually hostile environment for the Student, as required by Title IX.* Further, OCR has concerns because there is no indication that the School disciplined the Responding Party for his role in taking the video without the Student's consent or that the School took steps to provide services such as counseling to the Student as a result of her being videotaped without her consent and having that video distribute without her consent.

8

With respect to the sexual encounter, *our investigation found that the School did not consider Title IX in its investigation of the incident because, based on the facts it uncovered during its investigation (i.e. the video and information obtained from the Student, the Responding Party, and the Student's family members), it determined that the encounter was consensual and as such, did not constitute sexual harassment or sexual violence... (emphasis added)*.

34.     In December 2017, Mastery and the United States Department of Education entered into a Resolution Agreement, in which Mastery acknowledged the multiple significant deficiencies and areas of non-compliance with Title IX, and agreed to do the following:

- Submit to the OCR for its review and approval draft Title IX grievance procedures to address complaints of sex discrimination (including sexual assault and sexual violence);

- Adopt and implement procedures and provide all students, parents/guardians and employees with written notice regarding the new grievance procedures for resolving Title IX complaints together with information on how to obtain a copy of the grievance procedures;

- Submit to the OCR for its review and approval a draft notice of nondiscrimination pursuant to 34 C.F.R. §106.9;

- Adopt and implement the notice of nondiscrimination and provide all students, parents/guardians and employees with written notice regarding the new notice of nondiscrimination;

- Develop and provide Title IX training to its Title IX Coordinator and any other Mastery employees who will be directly involved in processing, investigating and/or resolving complaints of sex discrimination (including sexual harassment) or who will otherwise assist in Mastery's compliance with Title IX;

- Provide Title IX training to all Mastery staff who interact with students on a regular basis;

- Issue a written offer to pay for A.J.'s counseling/academic/therapy services for the assessment and/or treatment of the lingering effects from the [sexual assault];

- Develop a centralized record-keeping process for documenting and tracking complaints of sexual harassment, including sexual assault; and

- Prepare a report summarizing all incidents alleging sexual harassment, including sexual assault, investigated at the School during the proceeding academic year.

## DAMAGES

35.     As a result of the sexual assault and Defendants' deliberate indifference to A.J.'s rights, including the Defendants' publication and circulation of the video depicting the sexual assault, A.J. has suffered severe, life-altering and catastrophic damages, including Post Traumatic Stress Disorder, Major Depressive Disorder, anxiety, emotional distress, fear, embarrassment, humiliation and other severe developmental, psychiatric, social and emotional problems.

36.     These problems experienced by A.J. have manifested themselves in very serious and life-threatening ways, necessitating long-term and emergency medical and psychiatric treatment and behavioral therapy.

## COUNT I

**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972**
**20 U.S.C. § 1681 *et seq.***
**Plaintiff v. Defendants Mastery and Pastorius**

37.     Plaintiff restates and realleges the above preceding paragraphs as though set forth here in full.

10

38.     Title IX of the Education Amendments of 1972 (Title IX) enacted broad

prohibition against sex discrimination and harassment by a school receiving federal financial

assistance, providing in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from
> participation in, be denied the benefits of, or be subjected to discrimination under
> any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

39.     Defendants own and operate a public charter school that receives federal financial

assistance, and is therefore subject to the requirements of Title IX.

40.     Defendants were deliberately indifferent to the sexual harassment and assault

against A.J.

41.     The sexual harassment and assault against A.J., as well as other incidents of

sexual harassment and assault of which Defendants had actual knowledge, was severe, pervasive

and objectively offensive.

42.     The sexual harassment and assault against A.J. created a hostile environment at

the School and interfered with A.J's ability to participate in and benefit from the School's

educational program.

43.     Defendant's inappropriate and pathetic response to the sexual harassment and

assault against A.J. further created a hostile environment for A.J.

44.     Defendants had an official policy of deliberate indifference to providing adequate

training or guidance that is obviously necessary for investigating and responding to reports of

sexual discrimination, harassment and assault.

11

45.     Defendants' lack of training and guidance with respect to sexual harassment and discrimination made students, including A.J., especially vulnerable to sexual harassment and discrimination at Defendants' school.

46.     Defendants' failure to investigate and take corrective measures in response to the sexual assault and harassment of A.J. at the School was clearly unreasonable in light of the circumstances known to the School.

47.     Defendants had actual knowledge of prior incidents of sexual assault and harassment at the School and took no or insufficient action to implement trainings or policies to protect students from this known and foreseeable risk.

48.     Despite the legal obligation to do so, Defendants did not designate or employ a Title IX Coordinator to coordinate efforts to comply with and carry out its responsibilities under Title IX, as required by Title IX's implementing regulation at 34 C.F.R. § 106.8(a).

49.     Despite the legal obligation to do so, Defendants enacted no grievance procedures to address complaints of sex discrimination (including sexual assault and sexual violence), as required by Title IX's implementing regulation at 34 C.F.R. § 106.8(b).

50.     Despite the legal obligation to do so, Defendants did not communicate a Notice of Nondiscrimination to notify students, parents, guardians and employees that the School does not discriminate on the basis of sex and referring inquiries to the School's Title IX Coordinator, as required by 34 C.F.R. § 106.9.

51.     Despite the legal obligation to do so. Defendants did not develop or provide any training with respect to sex discrimination (including sexual assault and sexual violence) to its Title IX Coordinator or any other employees or personnel.

Case 2:19-cv-01458-RBS   Document 23   Filed 07/23/19   Page 48 of 53

Case 2:19-cv-01458-RBS   Document 20   Filed 07/10/19   Page 13 of 18

52.     Despite the legal obligation to do so, Defendants did not develop or maintain any record-keeping process for documenting and tracking incidents or complaints of sex discrimination, including sexual assault and sexual violence.

53.     The described unlawful practices by Defendants were intentional, deliberate, willful and were with malice or reckless indifference to Plaintiffs' rights protected by the laws of the United States, as well as the laws of the Commonwealth of Pennsylvania.

54.     Defendant's breaches of their legal obligations under Title IX directly lead to the sexual discrimination and assault on A.J., and has resulted in severe, life-altering and catastrophic damages.

WHEREFORE, Plaintiff Rosemary Roussaw, as legal guardian of A.J., A Minor, demands judgment in her favor and against Defendants and requests an award of damages including, but not limited to compensatory damages, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted by law and as this court deems just and appropriate.

## COUNT II

**VIOLATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION and THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. §1983**
**Plaintiff v. All Defendants**

55.     Plaintiff restates and realleges the above preceding paragraphs as though set forth here in full.

56.     A.J. has a right, guaranteed by the Fourteenth Amendment of the United States Constitution, as a public school student under the care and supervision of Defendants, to be free from sexual discrimination, harassment and assault, personal security, bodily integrity and Equal Protection under the law.

57.     All Defendants were state actors and/or were acting under color of state law.

13

58.    Sexual discrimination, harassment and assault is a serious and prevalent problem in public schools, including specifically at Pastorius and Mastery Schools, that requires a level of training, education and preparation that is commensurate with the harm that such conduct causes to victims, schools and communities.

59.    Defendants were deliberately indifferent to the problems and obvious risks of harm associated with the serious and prevalent problems of sexual discrimination, harassment and assault at Pastorius, and created and maintained a policy and custom of inadequate training, supervision, reporting, investigation, record keeping, and response to address the serious problems that lead to sexual discrimination, harassment and assault of students.

60.    Defendants had notice of previous incidents of sexual discrimination, harassment and assault of students at the School at failed to take reasonable and appropriate measures to provide training, supervision, reporting, investigation, record keeping, and response to prevent and respond to future incidents of sexual discrimination, harassment and assault of students at the School.

61.    Defendants deliberate indifference to the need for training, supervision, reporting, investigation, record keeping, and response was so obvious and deficient, it was foreseeable and likely to result in the violation of students' rights, including specifically A.J.

62.    Defendants created and maintained a policy, custom and practice that were inadequate to providing training or guidance and for investigating and responding to reports of sexual discrimination, harassment and assault at the School.

63.    Defendants created and maintained a policy, custom and practice that were inadequate to allow for appropriate reporting of sexual discrimination, harassment and assault at the School.

64.     Defendants created and maintained a policy, custom and practice that were inadequate to monitor and supervise students to prevent incidents of sexual discrimination, harassment and assault at the School.

65.     Defendants created and maintained a policy, custom and practice that were inadequate to provide emotional support, counseling and a safe environment for victims of sexual discrimination, harassment and assault at the School.

66.     Defendants created and maintained a policy, custom and practice of blaming victims of sexual discrimination, harassment and assault at the School.

67.     Defendants were not appropriately trained on reporting incidents of sexual discrimination, harassment and assault at the School.

68.     Defendants were not appropriately trained to address and respond to incidents of sexual discrimination, harassment and assault at the School.

69.     Defendants were not appropriately trained to identify incidents of sexual discrimination, harassment and assault at the School.

70.     The inadequate policies, customs and practices created and maintained by Defendants directly lead to the sexual discrimination and assault on A.J., and has resulted in severe, life-altering and catastrophic damages.

WHEREFORE, Plaintiff Rosemary Roussaw, as legal guardian of A.J., A Minor, demands judgment in her favor and against Defendants and requests an award of damages including, but not limited to compensatory damages, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted by law and as this court deems just and appropriate.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff v. All Individual Defendants

71.     Plaintiff restates and realleges the above preceding paragraphs as though set forth here in full.

72.     Defendants acted recklessly or intentionally by discriminating against A.J. failing to timely and appropriately responding to threats to A.J. safety.

73.     Defendants acted recklessly or intentionally by allowing for and facilitating the distribution and publication of the video depicting the sexual assault of A.J.

74.     Defendants' conduct was extreme and outrageous, especially considering that the School holds itself out to its students, families and the public as a safe environment for children.

75.     As a direct and proximate result of the extreme and outrageous conduct of Defendants as set forth above. A.J. has suffered severe emotional distress, requiring intensive psychiatric treatment.

76.     The extreme and outrageous conduct of Defendants, as set forth above, which was committed with a reckless indifference to the rights of A.J., warrant the imposition of punitive damages.

WHEREFORE, Plaintiff Rosemary Roussaw, as legal guardian of A.J., A Minor, demands judgment in her favor and against Defendants and requests an award of damages including, but not limited to compensatory damages, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted by law and as this court deems just and appropriate.

16

## COUNT IV

### BREACH OF FIDUCIARY DUTY
#### Plaintiff v. All Individual Defendants

77.     Plaintiff restates and realleges the above preceding paragraphs as though set forth here in full.

78.     A fiduciary relationship exists between the individual defendants and A.J., as the individual defendants exercise overmastering influence over A.J.

79.     A.J. was in a position of dependence and placed her trust in the individual defendants to maintain a safe and discrimination-free school environment.

80.     Individual Defendants had a fiduciary duty and obligation to act in the best interests of A.J., including but not limited to, not discriminating against A.J., ensuring A.J.'s safety at school and timely and appropriately responding to threats to A.J. safety.

81.     The Individual Defendants intentionally and recklessly breached their fiduciary duty to A.J. by knowingly discriminating against A.J., failing to ensure A.J.'s safety at school and failing to timely and appropriately respond to threats to A.J. safety and well-being, including the sexual assault and the distribution and publication of the video.

82.     A.J. suffered severe and permanent damages, all of which were foreseeable, as a result of Defendant's breach of fiduciary duty.

WHEREFORE, Plaintiff Rosemary Roussaw, as legal guardian of A.J., A Minor, demands judgment in her favor and against Defendants and requests an award of damages including, but not limited to compensatory damages, punitive damages, reasonable attorneys' fees and costs, and other relief as this court deems appropriate.

### JURY DEMAND

The Plaintiff demands trial by jury of all issues triable of right to a jury.

17

## CERTIFICATION

I hereby certify that Plaintiff has not brought a similar or related lawsuit encompassing the claims brought in this matter.

Respectfully Submitted,

**SCHATZ & STEINBERG, P.C.**

By: _____
Steven J. Schatz, Esquire (Pa ID #84509)
1500 JFK Boulevard, Suite 1300
Philadelphia, PA 19102
215-845-0250
sschatz@s2firm.com

**THE PEARLMAN LAW FIRM, PLLC**

By:  ___/s/ Jason L. Pearlman_____
Jason L. Pearlman, Esquire (Pa ID #93879)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004
610-660-7793
jpearlman@pearlmanlawfirm.com

DATED:  July 10, 2019

*Attorneys for Plaintiff Rosemary Roussaw as
Legal Guardian of A.J., A Minor*

18