IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSEMARY ROUSSAW, | : | |
| As Legal Guardian of A.J., A Minor, | : | |
| Plaintiff | : | |
| v. | : | No.: 2:19-cv-01458-RBS |
| | : | |
| MASTERY CHARTER HIGH SCHOOL; | : | |
| MASTERY CHARTER SCHOOL PASTORIUS- | : | |
| RICHARDSON ELEMENTARY f/k/a FRANCIS | : | |
| D. PASTORIUS-MASTERY CHARTER SCHOOL; | : | |
| SCOTT GORDON; HILLARY MESERVE; | : | |
| ERIC LANGSTON; and MICHAEL PATRON | : | |
| Defendants | : | |

## O R D E R

AND NOW, this            day of                        , 2019, upon

consideration of Defendants' Motion for Judgment on the Pleadings and Plaintiff's response

thereto, it is hereby ORDERED and DECREED that Defendant's Motion is DENIED.


BY THE COURT:


_____

                                                                J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROSEMARY ROUSSAW,              :
As Legal Guardian of A.J., A Minor,   :
                      Plaintiff   :
    v.                       :     No.: 2:19-cv-01458-RBS
                          :
MASTERY CHARTER HIGH SCHOOL;   :
MASTERY CHARTER SCHOOL PASTORIUS- :
RICHARDSON ELEMENTARY f/k/a FRANCIS :
D. PASTORIUS-MASTERY CHARTER SCHOOL:
SCOTT GORDON; HILLARY MESERVE;   :
ERIC LANGSTON; and MICHAEL PATRON  :
                   Defendants  :

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Rosemary Roussaw,[1] by and through her undersigned counsel, hereby files this

Brief in Opposition to Defendants' Motion For Judgment on the Pleadings, and in support

thereof, sets forth the following arguments.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

This is a civil action for damages arising from a sexual assault against Plaintiff's

granddaughter, A.J., a thirteen year-old girl in 7th grade at Mastery Charter School Pastorius-

Richardson Elementary (the "School") in Philadelphia on May 27, 2016.  A video of the sexual

assault was circulated among students and staff at the School.  Despite the fact that there had

been multiple previous incidents of sexual harassment and assault at the School, the United

States Department of Education, which investigated the incident, determined that the School

failed to enact and employ even the most basic of safeguards and procedures to prevent and

respond to such incidents, as required by federal law.  The School and its administrators sought

---

[1] Plaintiff Rosemary Roussaw ("Ms. Roussaw" or "Plaintiff") is the legal guardian and grandmother of A.J., a minor, residing in Philadelphia (Am. Compl. ¶2).

to deflect blame for their own failures and made the determination, based on a bogus and faulty investigation, that the sexual incident was consented to by the thirteen year-old girl and blamed her for the incident, further victimizing her in the process.  (Am. Compl. ¶1)[2].

The School had approximately 600 students in kindergarten through 8th grade and was/is owned and operated by Defendant Mastery Charter High School ("Mastery") (Am. Compl. ¶4). Mastery is the owner and operator of 24 charter schools in Pennsylvania and New Jersey, serving approximately 14,000 students and employing more than 1,700 employees (Am. Compl. ¶3). Defendant Scott Gordon serves as Chief Executive Officer of Mastery and oversaw and was primarily responsible for all customs, policies and procedures of Mastery and the School (Am. Compl. ¶5).  Defendant Michael Patron served as Director of Compliance of Defendant Mastery and was responsible for ensuring Mastery and the School's compliance with the law and the requirements of Title IX (Am. Compl. ¶8).  Defendant Hillary Meserve served as Principal of the School (Am. Compl. ¶6) and Defendant Eric Langston served as Assistant Principal of the School (Am. Compl. ¶7).

Plaintiff's Amended Complaint sets forth in great detail the factual circumstances of the sexual assault on A.J. and Defendants' violations of A.J.'s legal rights and failure to comply with the law.  Plaintiff's Amended Complaint avers, in part, as follows:

- On May 27, 2016, at Pastorius, A.J. was approached by a male, 15 year-old student in eighth grade ("R.H."), in the School auditorium.  R.H. asked A.J. if he could have sex with her, to which A.J. responded: "No."  Thereafter, R.H. persisted to which A.J. responded "I can't.  I never did this before."  R.H. continued to persist by saying "it's ok." R.H. then pulled up A.J.'s dress, pulled down her underwear and had sexual

---

[2] The Amended Complaint is attached as **Exhibit "A" herein.**

intercourse with A.J. (Am. Compl. ¶13). A.J. did not consent to having sexual

intercourse with R.H. through her words or conduct (Am. Compl. ¶14).[3]

- Following the sexual assault, R.H. threatened A.J. and told her that "you better not

  tell anybody" about this. (Am. Compl. ¶15).[4]

- Unbeknownst to A.J. at the time of the sexual assault, R.H. recorded a video on his

  cell phone depicting him having sexual intercourse with A.J. (Am. Compl. ¶16).

- A.J. was fearful and ashamed and did not say anything to anyone about the sexual

  assault by R.H. (Am. Compl. ¶17).[5]

- Defendant Langston learned of the existence of the video on May 27, 2016- the same

  day that the sexual assault occurred. (Am. Compl. ¶18). Defendant Langston

  claimed to have conducted an investigation of the video upon learning of its

  existence, but he did not contact Ms. Roussaw about the video and the sexual

  encounter involving A.J. until June 9, 2016, *thirteen days after* he learned of the

  video. (Am. Compl. ¶19).[6]

- The video was distributed among multiple students at the School, without A.J. or

  Plaintiff's knowledge. (Am. Compl. ¶20).

---

[3] Plaintiff further alleges that, at the age of 13, A.J. did not otherwise have the legal capacity to give her consent. (Am. Compl. ¶14).
[4] Defendants omitted any mention of this fact from their Motion.
[5] Defendants mischaracterized the averments in this paragraph of Plaintiff's Amended Complaint, stating only that "A.J. did not report the incident to anyone." (Defts' Brief at 4).
[6] Defendants' assertion that "Mr. Langston immediately took action to investigate the video once he had notice of it" (Defendants' Brief at 9) is self-serving and completely at odds with the facts pled in Plaintiff's Amended Complaint, i.e. he did not contact Ms. Roussaw about the video and the sexual encounter involving A.J. until June 9, 2016, *thirteen days after* he learned of the video. (Am. Compl. ¶19). Also, Defendant Meserve, admitted that she learned of the sexual incident about a week after it occurred when she was shown "a video of the incident on a student's cell phone that Mr. Langston showed me." (Am. Compl. ¶21).

- The School's Principal, Defendant Hillary Meserve, admitted that she learned of the sexual incident "about a week later" when she was shown "a video of the incident on a student's cell phone that Mr. Langston showed me." (Am. Compl. ¶21).[7]

- On June 9, 2016, Ms. Roussaw was called to come to the School to meet with Defendant Langston.  When she arrived in the School, she witnessed Defendant Langston showing the video on his cell phone to other individuals that were gathered around him.  He then showed the video to Ms. Roussaw and told her that he had been in possession of the video for "about a week." (Am. Compl. ¶22).

- Ms. Roussaw was devastated and distraught.  Defendant Langston then brought Ms. Roussaw into a meeting in a conference room at the School with A.J., R.H., R.H's father, Ms. Roussaw's two daughters. (Am. Compl. ¶22).

- Ms. Roussaw was questioned at the School by police officers who were called in by the School to investigate. (Am. Compl. ¶22).

- Defendants callously dismissed the incident as "consensual," notwithstanding the fact that A.J. was only thirteen years old and stated that she told R.H. "no."[8] (Am. Compl. ¶23).

- Despite Defendants' conclusion that A.J. had consented to sexual intercourse (even though she was only thirteen years old and stated that she told R.H. "No"),

---

[7] Defendants' assertion that the School "acted immediately when it heard rumors that an incident had taken place, *despite A.J.'s refusal to cooperate in the investigation*" (Defendants' Brief at 9) is in conflict with the facts pled in the Amended Complaint and simply outrageous.  Even now, more than three years after A.J. suffered the sexual assault at the School, Defendant's continue to point a finger at her and blame her for their own failures.

[8] Although Defendants cite to ¶23 of the Amended Complaint, Defendant's omit any mention of the fact that A.J. was only thirteen years old at the time of the assault and that she told R.H. "No."

Defendants acknowledged that A.J. did not consent to the videotaping.[9] (Am. Compl. ¶24).

- Although she was a victim of sexual assault, Defendants Langston and Meserve determined that A.J. should be suspended and was not permitted to return to School for the remainder of the school year.  (Am. Compl. ¶25).

Defendants' recitation of the factual averments in Plaintiff's Amended Complaint, all of which much be assumed to be true for purposes of Defendants' Motion, is grossly incomplete in that they purposely omit any mention of the following factual averments related to prior sexual assaults[10] at Mastery:

- Prior to the sexual assault of A.J., there were multiple sexual harassment and assault incidents at Mastery Schools that were known to Defendants, going back to 2008 or earlier.  (Am. Compl. ¶27).

- In 2008, as reported by the *Philadelphia Inquirer*, two eighth grade students engaged in sexual intercourse in the stairwell of the school, resulting in the expulsion of the male student.  It was reported that the male student's mother "said a school employee told her that sexual activity is so rampant among some students that girls have been found with sexual contracts stipulating to whom they wanted to lose their virginity." (Am. Compl. ¶28).

- Earlier in 2016, only months prior to the sexual assault on A.J., a 13 year-old, seventh grade student was sexually assaulted in the lunchroom at Pastorius Elementary.  This

---

[9] Apparently, Defendants are no longer in possession of the videotape on which they rely.
[10] Plaintiff has set forth in her Complaint only those prior incidents that were known to her at the time of filing her Complaint.  It is anticipated that discovery will reveal additional evidence of pervasive sexual harassment and assault at Mastery.

incident was known to other students, staff and members of the School community. (Am. Compl. ¶29).

- Despite the multitude of incidents of sexual misconduct and violence occurring at the School, all of which were known to other students, staff and members of the School community, Defendants failed to take prompt and effective steps to address the sexual violence among its children and the hostile environment to which they were exposed. (Am. Compl. ¶30).

Defendants also purposely omit any mention of the investigation by the United States Department of Education, Office of Civil Rights (OCR) of the sexual assault against A.J. at the School, and the multiple significant deficiencies and areas of non-compliance with Title IX. (Am. Compl. ¶31):

- OCR determined that at the time of the sexual assault on A.J., Defendants did not have a Title IX Coordinator; did not have any grievance procedures as required by Title IX; did not have any policies or procedures for investigating reports of sexual assault or discrimination at the School; did not have any policies or procedures in place to address sexual assault or discrimination apart from its normal disciplinary policies and procedures; did not have any policies or procedures in place for reporting about sexual assault or discrimination at the School; did not provide any training to its students, administration, teachers and staff with respect to sexual assault or discrimination as required by Title IX; and did not maintain records of incidents of sexual assault or harassment.  (Am. Compl. ¶32).

- OCR further determined, in part, the following:

> Our investigation found that there were two separate incidents that constituted conduct of a sexual nature that should have triggered an investigation

6

under Title IX: (1) the sexual encounter in the auditorium between the Student [A.J.] and the Responding Party [R.H.]; and (2) the Responding Party videotaping the sexual encounter in the auditorium without the Student's consent.  *Our investigation found, however, that neither the Principal nor the Assistant Principal invoked Title IX during their investigation into each of these incidents.*

Our investigation found that the video constituted conduct of a sexual nature and that the Assistant Principal immediately took action to investigate the video once he had notice of it.  Mastery's written statement to OCR and the Student's witness statement indicate that the student did not consent to being videotaped; thus the evidence shows that the videotaping was unwelcome. However, *the evidence does not show that the School made a determination regarding whether the video created a sexually hostile environment for the Student, as required by Title IX.*  Further, OCR has concerns because there is no indication that the School disciplined the Responding Party for his role in taking the video without the Student's consent or that the School took steps to provide services such as counseling to the Student as a result of her being videotaped without her consent and having that video distribute without her consent.

With respect to the sexual encounter, *our investigation found that the School did not consider Title IX in its investigation of the incident because, based on the facts it uncovered during its investigation (i.e. the video and information obtained from the Student, the Responding Party, and the Student's family members), it determined that the encounter was consensual and as such, did not constitute sexual harassment or sexual violence…* (*emphasis added*).  (Am. Compl. ¶33).

In December 2017, Mastery and the United States Department of Education entered into a Resolution Agreement, in which Mastery acknowledged the multiple significant deficiencies and areas of non-compliance with Title IX and its implementing regulations, and agreed to do the following:

- Submit to the OCR for its review and approval draft Title IX grievance procedures to address complaints of sex discrimination (including sexual assault and sexual violence);

- Adopt and implement procedures and provide all students, parents/guardians and employees with written notice regarding the new grievance procedures for resolving Title IX complaints together with information on how to obtain a copy of the grievance procedures;

- Submit to the OCR for its review and approval a draft notice of nondiscrimination pursuant to 34 C.F.R. §106.9;

- Adopt and implement the notice of nondiscrimination and provide all students, parents/guardians and employees with written notice regarding the new notice of nondiscrimination;

- Develop and provide Title IX training to its Title IX Coordinator and any other Mastery employees who will be directly involved in processing, investigating and/or resolving complaints of sex discrimination (including sexual harassment) or who will otherwise assist in Mastery's compliance with Title IX;

- Provide Title IX training to all Mastery staff who interact with students on a regular basis;

- Issue a written offer to pay for A.J.'s counseling/academic/therapy services for the assessment and/or treatment of the lingering effects from the [sexual assault];

- Develop a centralized record-keeping process for documenting and tracking complaints of sexual harassment, including sexual assault; and

- Prepare a report summarizing all incidents alleging sexual harassment, including sexual assault, investigated at the School during the proceeding academic year. (Am. Compl. ¶34).

As a result of the sexual assault and Defendants' deliberate indifference to A.J.'s rights, including the Defendants' publication and circulation of the video depicting the sexual assault, A.J. has suffered severe, life-altering and catastrophic damages, including Post Traumatic Stress Disorder, Major Depressive Disorder, anxiety, emotional distress, fear, embarrassment, humiliation and other severe developmental, psychiatric, social and emotional problems. These

problems experienced by A.J. have manifested themselves in very serious and life-threatening ways, necessitating long-term and emergency medical and psychiatric treatment and behavioral therapy.  (Am. Compl. ¶35-36).

Plaintiff asserts legal claims to recover compensatory and punitive damages under 20 U.S.C. §1681 et seq. ("Title IX") (Count I), 42 U.S.C. §1983 (Count II) as well as state common law claims against the Individual Defendants for Intentional Infliction of Emotional Distress (Count III) and Breach of Fiduciary Duty (Count IV).  At this stage, Defendants have submitted a Motion for Judgment on the Pleadings that advances a grossly incomplete and misleading recitation of the facts and Defendants' arguing its own competing version of the facts. Accordingly, and as argued below, Defendants' motion should be denied.

## II.    LEGAL STANDARD

After the pleadings are closed but early enough not to delay trial, a party may move for judgment on the pleadings. Fed.R.Civ.P. 12(c).  Judgment on the pleadings will not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and that the party is entitled to judgment as a matter of law. *Rosenau vs. Unifund Corp.*, 539 F.3d 218 (3d Cir. 2008).  In reviewing such a motion, the court applies the same standards applied under Rule 12(b)(6). *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004).

It is well-established that the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *quoting Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 at n. 7 (3d Cir. 2002).

Notice pleading standards under Federal Rule of Civil Procedure 8(a), require "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. County of Allegheny*, 515 F.3d at 231, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotations omitted).  The court must accept all factual allegations in Plaintiff's Complaint as true and draw all reasonable inferences in favor of the Plaintiff. *Cornell Companies, Inc. v. Borough of New Morgan*, 512 F. Supp.2d 238, 255 (E.D. Pa. 2007), *citing Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1164-64 (3d Cir. 1987).  "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. County of Allegheny*, 515 F.3d at 231, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. at 545 (2007).  The United States Supreme Court made clear in *Twombly* that the notice pleading standard "does not impose a probability requirement at the pleading stage." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 545. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997), *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  *See also Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81 (3d Cir. 1987)(noting that "[u]nder the federal notice pleading rules, the threshold for stating a cause of action to survive a Rule 12(b)(6) motion is very low").

There is clearly no heightened pleading requirement in civil rights actions, beyond what is required by Federal Rule of Civil Procedure 8.  "The Plaintiff in a civil rights action does not need to plead specific facts; rather, the complaint 'must only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Cornell Companies, Inc. v.*

*Borough of New Morgan*, 512 F. Supp. 2d 238, 269 (E.D.Pa. 2007), *quoting Thomas v.*

*Independence Twp.*, 463 F.3d 285, 295 (3d Cir. 2006).  The law in the Third Circuit is clear that

"a plaintiff will not be thrown out of court on a Rule 12(b)(6) motion for lack of detailed facts."

Id.  This Court in *Cornell Companies* stated that:

> [A] civil rights complaint is not subject to dismissal due to the absence of factual
> allegations. The Complaint is only required to set forth the facts necessary to
> provide notice of the claim and the basis for the relief sought.  Should more facts
> be necessary to define the disputed facts and issues, the Federal Rules provide
> other procedural mechanisms for that purpose, such as discovery.
> ***
> The need for discovery before testing a complaint for factual sufficiency is
> particularly acute for civil rights plaintiffs, who often face informational
> disadvantages.  Plaintiffs may be unaware of the identities and roles of relevant
> actors and unable to conduct a pre-trial investigation to fill in the gaps.

*Id.* (internal citations omitted).  It is only at the summary judgment stage, after discovery has

taken place, that "defendants can argue there is a lack of factual support to allow a claim against

them to proceed."  *Id.*  The moving party cannot merely rest upon recitations of evidence

supportive of its own position, since such differences present questions for the finder of fact, and

not the judge deciding a motion to dismiss.  *Bailets v. Pa. Tpk. Comm'n*, 123 A.3d 300 (Pa.

2015), *citing Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.*, 106 A.3d 27, 41 (Pa.

2014).

## III.   ARGUMENT

### A.  Plaintiff Has Pled a Plausible Claim Under Title IX

Title IX provides, in relevant part, that "no person in the United States shall, on the basis

of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial assistance."

20 U.S.C. § 1681(a).  There is no dispute that Defendants Mastery and the School are recipients

of federal education funding and that the requirements of Title IX are applicable to them.

The Supreme Court of the United States has made clear that a private action for damages under Title IX may lie against a school in cases of student-on-student harassment. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). The Court in *Davis* concluded that such a cause of action exists in circumstances "where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities" and where the harassment "is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit. *Id.* Deliberate indifference may be demonstrated where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances. *Davis, supra*, 526 U.S. at 648-649. The school may be liable where its deliberate indifference causes "[students] to undergo harassment or make them liable or vulnerable to it. *Davis, supra*, 526 U.S. at 645 (internal quotations omitted). A recipient of federal funds may be liable for the harassment where "the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis, supra*, 526 U.S. at 645. Where the misconduct occurs during school hours and on school grounds, or otherwise under the supervision of school employees, the [school] retains substantial control over the harasser and the context in which the harassment occurs. *Davis, supra*, 526 U.S. at 646.

> On more than one occasion, this Court has recognized the importance of school officials' comprehensive authority . . . , consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools. The maintenance of discipline in the schools requires not only that students be restrained from assaulting one another, abusing drugs and alcohol, and committing other crimes, but also that students conform themselves to the standards of conduct prescribed by school authorities. The ability to control and influence behavior exists to an even greater extent in the classroom than in the workplace . . . The common law, too, recognizes the school's disciplinary authority. We thus conclude that recipients of federal funding may be liable for subjecting their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority.

*Davis, supra*, 526 U.S. at 646-647 (internal quotations and citations omitted).

The *Davis* Court made clear as part of its holding that the context in which the offending conduct occurs is significant: Whether gender-oriented conduct rises to the level of actionable "harassment" thus "depends on a constellation of surrounding circumstances, expectations, and relationships," *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998), including, but not limited to, the ages of the harasser and the victim and the number of individuals involved, see OCR Title IX Guidelines 12041-12042. *Davis, supra*, 526 U.S. at 651. *See also Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 205-06 (3d Cir. 2001).

The *Davis* Court recognized that a single instance of harassment may be sufficiently severe to create liability under Title IX. *Davis, supra*, 526 U.S. at 652-653. *See also Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 259 n.4 (6th Cir. 2000)(within the context of Title IX, a student's claim of hostile environment can arise from a single incident); *Soper v. Hoben*, 195 F.3d 845, 855 (6th Cir. 1999) (explaining that rape and sexual abuse "obviously qualif[y] as…severe, pervasive, and objectively offensive sexual harassment"); *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 692 (7th Cir. 2010) (in the Title VII context, "a single act can create a hostile environment if it is severe enough, and instances of uninvited physical contact with intimate parts of the body are among the most severe types of sexual harassment"); *Turner v. Saloon, Ltd.*,595 F.3d 679, 686 (7th Cir. 2010) (noting that "'[o]ne instance of conduct that is sufficiently severe may be enough,'" which is "especially true when the touching is of an intimate body part" (*quoting Jackson v. Cnty. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007))).

Schools are required by the Title IX regulations, promulgated by the U.S. Department of Education (the "DOE"), to adopt and publish a policy against sex discrimination and grievance

procedures providing for prompt and equitable resolution of complaints of discrimination on the basis of sex. 34 CFR §106.8(b) and §106.9. Accordingly, a school violates this requirement of the Title IX regulations if it does not have those procedures and policy in place. This requirement has been part of the Title IX regulations since their inception in 1975. *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, U.S. Department of Education, Office for Civil Rights, 19 (January 2001). The DOE found Defendants to be in violation of these regulations.[11]

The DOE's published Guidance with respect to Title IX highlights how notice of harassment and a hostile environment may be imputed to the School in a diverse variety of ways:

> The school may receive notice about harassment in an indirect manner, from sources such as a member of the school staff, a member of the educational or local community, or the media. The school also may have learned about the harassment from flyers about the incident distributed at the school or posted around the school. For the purposes of compliance with the Title IX regulations, a school has a duty to respond to harassment about which it reasonably should have known, i.e., if it would have learned of the harassment if it had exercised reasonable care or made a "reasonably diligent inquiry."

> For example, in some situations if the school knows of incidents of harassment, the exercise of reasonable care should trigger an investigation that would lead to a discovery of additional incidents. In other cases, the pervasiveness of the harassment may be enough to conclude that the school should have known of the hostile environment if the harassment is widespread, openly practiced, or well-known to students and staff (such as sexual harassment occurring in the hallways, graffiti in public areas, or harassment occurring during recess under a teacher's supervision.)

> If a school otherwise knows or reasonably should know of a hostile environment and fails to take prompt and effective corrective action, a school has violated Title IX even if the student has failed to use the school's existing grievance procedures or otherwise inform the school of the harassment.

---

[11] In addition, the Defendants were in violation of the DOE regulation requiring that each School designate a "Title IX Coordinator" as follows: Each recipient shall designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under this part, including any investigation of any complaint communicated to such recipient alleging its noncompliance with this part or alleging any actions which would be prohibited by this part. The recipient shall notify all its students and employees of the name, office address and telephone number of the employee or employees appointed pursuant to this paragraph. 34 CFR §106.8(a).

*Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, U.S. Department of Education, Office for Civil Rights, 13-14 (January 2001).

The DOE's Guidance further highlights how Mastery and the School's failure to enact and employ the legally required safeguards and procedures to prevent and respond to incidents of sexual assault and harassment, including the publication of Title IX grievance procedures, caused harassment to occur at the School and made its students, including A.J., vulnerable and at-risk for sexual harassment and assault.

> Schools are required by the Title IX regulations to adopt and publish grievance procedures providing for prompt and equitable resolution of sex discrimination complaints, including complaints of sexual harassment, and to disseminate a policy against sex discrimination. *These procedures provide a school with a mechanism for discovering sexual harassment as early as possible and for effectively correcting problems, as required by the Title IX regulations. By having a strong policy against sex discrimination and accessible, effective, and fairly applied grievance procedures, a school is telling its students that it does not tolerate sexual harassment and that students can report it without fear of adverse consequences.*
>
> *Without a disseminated policy and procedure, a student does not know either of the school's policy against and obligation to address this form of discrimination, or how to report harassment so that it can be remedied.* If the alleged harassment is sufficiently serious to create a hostile environment and it is the school's failure to comply with the procedural requirements of the Title IX regulations that hampers early notification and intervention and permits sexual harassment to deny or limit a student's ability to participate in or benefit from the school's program on the basis of sex, the school will be responsible under the Title IX regulations, once informed of the harassment, to take corrective action, including stopping the harassment, preventing its recurrence, and remedying the effects of the harassment on the victim that could reasonably have been prevented if the school's failure to comply with the procedural requirements had not hampered early notification.

*Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, U.S. Department of Education, Office for Civil Rights, 14 (January 2001) (emphasis added).

Defendants' deliberate indifference to sexual harassment and assault at Mastery is set forth with sufficient specificity in the Amended Complaint as stated above in the Procedural and Factual Background. It is disingenuous for Defendants to assert that insufficient facts were pled in support of this claim when they deliberately omitted the essential facts related to the prior incidents of sexual assault and the DOE's findings with respect to Defendants' severe Title IX deficiencies as part of their investigation. In light of the facts as pled in the Amended Complaint, Defendants' response, or lack thereof, to the sexual assault and the video recording of the incident is clearly unreasonable. In accordance with the law detailed above, Plaintiffs have presented detailed factual allegations which are more than sufficient to state a cause of action under Title IX.

### B.  Plaintiff Has Pled a Plausible Claim Pursuant to 42 U.S.C. §1983

A municipality is liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy, practice or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (*citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Accordingly, a successful *Monell* claim must establish: (1) an underlying constitutional violation; (2) a policy, custom or practice attributable to the municipality and (3) that the constitutional violation was caused by the municipality's policy, custom or practice. *See Monell*, 436 U.S. at 658.

> A failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.

*Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998). While a plaintiff alleging liability under 42 U.S.C. § 1983 need not plead detailed facts regarding an alleged policy, custom, or

16

practice, he must, in the very least, plead facts that:(i) put the defendants on notice with regards to the basis for the alleged policy, custom, or practice and (ii) "show" that he is entitled to relief as a result of that policy, custom, or practice. *Sharpe v. County of Dauphin*, 2010 WL 3529283 (M.D. PA. Sept. 7, 2010).  General allegations that a municipality failed to implement a policy and to appropriately train its employees is sufficient to withstand a motion to dismiss. *See Karchnak v. Swatara Township*, 540 F.Supp. 2d 540, 550-51 (M.D. Pa. 2008)(finding that allegations that a police department failed to implement a policy for the use of force and failed to train its officers in the appropriate use of force were sufficient to withstand a motion to dismiss); *see also Doll v. Township of Carroll*, 2008 U.S. Dist. Lexis 90305 (M.D. Pa 2008).  The essential inquiry is whether sufficient facts have been pled to demonstrate the existence of a policy, custom or practice of deliberate indifference to misconduct at the School. *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720 (3rd Cir. 1989)

Although Defendants have sanitized the facts in order to suit their argument, Plaintiff has asserted more than sufficient facts, and discovery promises to demonstrate in greater detail, of Defendants' custom and practice of deliberate indifference to sexual harassment and assault at Mastery.  Further, Defendants had an unwritten custom and practice of permitting sexual harassment and assaults to occur while young children were attending school.  In the face of "rampant" sexual harassment at Mastery, Defendants failed to implement policies and to appropriately train its employees, in knowing violation of the law.  Plaintiffs have asserted that there were multiple incidents of sexual assault at Mastery schools about which Defendants had notice, including a published report that "sexual activity is so rampant among some students that girls have been found with sexual contracts stipulating to whom they wanted to lose their virginity." (Am. Compl. ¶28).  Defendants conducted a sham "investigation" of the incident and

reached the conclusion that thirteen-year old A.J. consented to the sexual encounter, based on information obtained at a single "meeting" at which both students were present and after A.J. indicated that she told the boy "No" and that the boy had threatened her  (Am. Compl. ¶14-16, 22-25).  Despite the fact that she indicated that she told the boy "No," the boy had threatened her, and their recognition that she did not consent to the videotaping, the defendants added further insult to injury by punishing A.J. (Am. Compl. ¶14-16, 22-25).  The OCR investigation into the incident revealed multiple significant deficiencies and areas of non-compliance with the law, including that the School did not have a Title IX Coordinator; did not have any grievance procedures as required by Title IX; did not have any policies or procedures for investigating reports of sexual assault or discrimination at the School; did not have any policies or procedures in place to address sexual assault or discrimination apart from its normal disciplinary policies and procedures; did not have any policies or procedures in place for reporting about sexual assault or discrimination at the School; did not provide any training to its students, administration, teachers and staff with respect to sexual assault or discrimination as required by Title IX; and did not maintain records of incidents of sexual assault or harassment.  (Am. Compl. ¶31-32).  These failures and defendants' conduct, particularly when viewed in light of the prior incidents of sexual assault at Mastery, amount to unwritten practices and customs of deliberate indifference to sexual assault and harassment.

Plaintiff's § 1983 claim under *Monell* should not be dismissed. Though the law does not require detailed factual allegations under Fed. R. Civ. P. 8(a)(2), Plaintiffs have presented detailed factual allegations which are more than sufficient to state a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### C. **Defendants Gordon, Meserve, Langston and Patron Are Not Entitled To Qualified Immunity and Plaintiffs Claims Against Them Cannot be Dismissed on the Basis of Any Assertion of Such Immunity**

Defendants Gordon, Meserve, Langston and Patron's assertion that they are entitled to qualified immunity at this stage of the proceedings is plainly wrong.  The doctrine of qualified immunity "holds that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their *conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known*." *Doe v. Div. of Youth and Fam. Servs.*, 148 F.Supp.2d 462, 491 (*citing Elder v. Holloway*, 510 U.S. 510, 516 (1994) (emphasis added). *See also Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006) ("Government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'")(*quoting Wilson v. Layne*, 526 U.S. 603, 609 (1999)).

Qualified immunity is an affirmative defense to a claim of liability under 42 U.S.C. §1983 that must be established by the defendant. *Gomez v. Toledo*, 446 U.S. 635, 640-41 (1980)). If the matter presents disputed questions of fact, a jury must resolve those disputes by way of special interrogatories; based upon the answers, the trial judge will then determine the legal issue. *Id.* To determine whether state officials are entitled to qualified immunity, courts apply the two-part test: (1) whether the state actor violated a constitutional right, and (2) whether the right was clearly established. *Spiker v. Whittaker*, 553 Fed.App'x 275, 279 (3d Cir. April 2, 2014) (*citing Saucier v. Katz*, 533 U.S. 194, 202, 210 (2001). A right is clearly established if "*it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.* (*citing Saucier* at 201) (emphasis added)).

If the law is clearly established, the immunity defense "ordinarily should fail, since a reasonable official would understand that [his conduct] violates that right." *Id.* at 280. The law is "clearly established" when "the contours of the right are sufficiently clear that a reasonable official would understand that his conduct violates that right." *Id.* (*citing Anderson v. Creighton*, 483 U.S. 635, 649 (1987)). *See also Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). As Defendants correctly point out, the qualified immunity determination must be made in light of the specific factual context of the case*. Thomas v. Independence Twp.*, 463 F.3d 285, 289 (3rd Cir. 2006).

In the present case, A.J. had a clearly established right to her bodily integrity and to be free of sexual discrimination and harassment pursuant to the U.S. Constitution and federal statutory law, a fact which is not disputed by Defendants. This legal principal is fundamental; Title IX is decades old and has a body of administrative and interpretive caselaw that have developed around it. Defendants are, respectively, the Chief Operating Officer of the School (Mr. Gordon), the School Principal (Ms. Meserve), the School Assistant Principal (Mr. Langston), and the School's Director of Legal Compliance (Mr. Patron). These individuals must, under any objective standard, be expected to know of their students' rights to bodily integrity and to be free of sexual discrimination and harassment and of the School's legal obligations to its students under the law. Simply put, a child's right to be free of sexual discrimination and harassment, let alone physical assault, in her school, is a clear and well-established right of which the Defendants must have had knowledge. It would yield an absurd result to allow defendants to benefit from the cloak of immunity due to their unconscionable ignorance of and non-compliance with the law. The Court should therefore deny the defendants' motion to dismiss on the basis of qualified immunity.

### D.  **Plaintiff Has Pled a Plausible Claim for Intentional Infliction of Emotional Distress**

Count III of Plaintiff's Amended Complaint is for Intentional Infliction of Emotional Distress ("IIED"), asserted against each of the individually-named Defendants. A claim of IIED requires establishing three elements: 1) the defendant acted recklessly or intentionally; 2) the defendant's conduct was extreme and outrageous; and 3) the defendant's conduct caused plaintiff to suffer "severe emotional distress."   See Pa. SSJI (Civ) 17.40; Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998); Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000).

As detailed above and in Plaintiff's Complaint, Plaintiff has set forth sufficient facts to demonstrate "extreme and outrageous" conduct with respect to Defendants.  A.J. was a thirteen year old girl subjected to sexual assault on school grounds, arising from Defendant's willful failure to comply with the law to protect its students, including the placement of even the most basic of safeguards in the face of multiple prior incidents.  Defendants conducted a sham and clearly unreasonable investigation resulting in Defendant's conclusion that thirteen year old A.J. consented to the sexual encounter, despite her indication that she told the boy "No," had been threatened to keep her mouth shut and, added further insult to her injury by inflicting punishment on A.J.  More than sufficient facts have been set forth to permit Plaintiff to proceed to discovery on her IIED claim.  Accordingly, Defendants' motion with respect to Plaintiff's IIED claim should be denied.

### E.  **Plaintiff Has Pled a Plausible Claim for Breach of Fiduciary Duty**

Count IV of Plaintiff's Complaint is for the common law claim of Breach of Fiduciary Duty under Pennsylvania law, asserted against each of the individually named Defendants. A fiduciary relationship "appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness,

dependence or trust, justifiably reposed." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820 (Pa. 2017)(internal citations omitted).   A fiduciary relationship "is not confined to any specific association of the parties." *Leedom v. Palmer*, 117 A. 410, 411 (Pa. 1922).  While cases involving fiduciary relationships are necessarily fact specific, they "usually involve some special vulnerability in one person." *Yenchi* at 821. *See also Dobson v. Milton Hershey School*, 356 F.Supp.3d 428 (M.D. Pa. 2018)(permitting a student to assert breach of fiduciary duty claim against his school).

Given their respective positions of authority at Mastery and at the School, the Individual Defendants clearly had "overmastering influence" over the students, including A.J.  A.J. was in a position of dependence on defendants and placed her trust in them, as any student should reasonably be expected to.  Therefore, fiduciary duties were owed by the individual defendants to their students, which duties were breached due to their failures to protect A.J. from harm about which they had notice due to the prior incidents.  Further, Defendants' "investigation" of the incident and resulting conclusion that thirteen-year old A.J. consented to the sexual encounter, based on information obtained at a "meeting" at which both students were present and after A.J. indicated that she told the boy "No," amounts to a grievous breach of defendants' duties to their student.   The defendants had the power and duty to take protective measures against sexual harassment and assault, as prescribed by law, and failed in their duties, resulting in grievous harm to A.J.  Accordingly, Defendants' motion with respect to Plaintiff's breach of fiduciary duty claim should be denied.

### F.   Defendants Gordon, Meserve, Langston and Patron Are Not Entitled To Immunity Under the Political Subdivision Tort Claims Act

The Individual Defendants assert that they are entitled to immunity under the Political Subdivision Tort Claims Act with respect to the Pennsylvania common law claims asserted

against them.  However, the law is clear, as Defendants concede, that immunity does not apply to "willful misconduct" or intentional torts committed by Defendants.  *Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3rd Cir. 2001); *DiJoseph v. City of Philadelphia*, 947 F. Supp. 834 (E.D. Pa. 1996).

Such immunity plainly does not apply to a claim for intentional infliction of emotional distress, which involves an allegation of intentional conduct, not mere negligence.  *Id.*  Secondly, as detailed above and in Plaintiff's Amended Complaint with respect to Defendants' notice of prior sexual assault incidents and the OCR's findings,[12] Plaintiff has pled sufficient facts to demonstrate Defendants' intentional and/or willful misconduct.  Accordingly, Defendants cannot find shelter from liability in immunity under the Political Subdivision Tort Claims Act.

### G.  Plaintiff Has Pled a Plausible Claim for Punitive Damages

"A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  *See, e.g., Coleman v. Kaye*, 87 F.3d 1491, 1509 (3d Cir. 1996) (in sex discrimination case, holding that "the jury's finding of two acts of intentional discrimination, after having been put on notice of a prior act of discrimination against the same plaintiff, evinces the requisite 'reckless or callous indifference' to [the plaintiff's] federally protected rights"); *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006) ("A jury may award punitive damages when it finds reckless, callous, intentional or malicious conduct.").  Punitive damages are permissible

---

[12] Again, it cannot be ignored that Defendants crafted their arguments around the purposeful omission of essential facts pled in Plaintiff's Amended Complaint which speak to Defendants' willful misconduct.

for §1983 claims against individual defendants in their personal capacity. *Kessler v. Monsour*, 865 F.Supp. 234 (1994).[13]

The full spectrum of facts averred in Plaintiff's Complaint, including with respect to Defendants' "reckless and callous indifference" to the safety and welfare of its students, including A.J., by their knowing failure to adhere to the law, particularly in the face of prior incidents of sexual harassment and assault, are sufficient to support Plaintiff's claim for punitive damages.

## IV.    CONCLUSION

For the above-stated reasons, Defendants' Motion for Judgment on the Pleadings should be denied in its entirety.

<div style="margin-left:40%">

Respectfully Submitted,

**SCHATZ & STEINBERG, P.C.**

By:_____/s/ Steven J. Schatz_____
     Steven J. Schatz, Esquire (Pa ID #84509)
     1500 JFK Boulevard, Suite 1300
     Philadelphia, PA 19102
     215-845-0250
     sschatz@s2firm.com

**THE PEARLMAN LAW FIRM, PLLC**

By:_____/s/ Jason L. Pearlman_____
     Jason L. Pearlman, Esquire (Pa ID #93879)
     Two Bala Plaza, Suite 300
     Bala Cynwyd, PA 19004
     610-660-7793
     jpearlman@pearlmanlawfirm.com

</div>

DATED:  August 6, 2019                  *Attorneys for Plaintiff Rosemary Roussaw as*
                                        *Legal Guardian of A.J., A Minor*

---

[13] Plaintiff concedes that punitive damages are not recoverable in connection with Plaintiff's Title IX claims.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROSEMARY ROUSSAW,                                  :
As Legal Guardian of A.J., A Minor,                :
                                       Plaintiff   :
        v.                                         :       No.: 2:19-cv-01458-RBS
                                                   :
MASTERY CHARTER HIGH SCHOOL;                       :
MASTERY CHARTER SCHOOL PASTORIUS-                  :
RICHARDSON ELEMENTARY f/k/a FRANCIS                :
D. PASTORIUS-MASTERY CHARTER SCHOOL:               
SCOTT GORDON; HILLARY MESERVE;                     :
ERIC LANGSTON; and MICHAEL PATRON                  :
                                       Defendants  :

## CERTIFICATE OF SERVICE

I, Steven J. Schatz, Esquire, hereby certify that a true and correct copy of a Plaintiff's

Brief in Opposition to Defendant's Motion for Judgment on the Pleadings was filed via the

Eastern District Court's ECF Filing System and served as such, upon counsel listed below by the

Court's ECF filing system on August 6, 2019:

Rufus A. Jennings, Esquire
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street, 34th Floor
Philadelphia, PA  19103

**SCHATZ & STEINBERG, P.C.**

By:_____/s/ Steven J. Schatz_____
Steven J. Schatz, Esquire (Pa ID #84509)
1500 JFK Boulevard, Suite 1300
Philadelphia, PA 19102
215-845-0250
sschatz@s2firm.com

THE PEARLMAN LAW FIRM, PLLC

By:_____/s/ Jason L. Pearlman_____
Jason L. Pearlman, Esquire (Pa ID #93879)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004
610-660-7793
jpearlman@pearlmanlawfirm.com

DATED:  August 6, 2019

*Attorneys for Plaintiff Rosemary Roussaw as*
*Legal Guardian of A.J., A Minor*

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROSEMARY ROUSSAW                          :
As Legal Guardian of A.J., A Minor        :
6316 E. Wister St.                        :     CIVIL ACTION
Philadelphia, Pennsylvania 19138          :
                                          :     NO. 2019-cv-1458-RBS
                      Plaintiff,          :
                                          :
               v.                         :     JURY TRIAL DEMANDED
                                          :
MASTERY CHARTER HIGH SCHOOL               :
5700 Wayne Avenue                         :
Philadelphia, PA 19144                    :
                                          :
and                                       :
                                          :
MASTERY CHARTER SCHOOL                    :
PASTORIUS-RICHARDSON ELEMENTARY           :
f/k/a   FRANCIS D. PASTORIUS-             :
        MASTERY CHARTER SCHOOL            :
5650 Sprague Street                       :
Philadelphia, PA 19138                    :
                                          :
and                                       :
                                          :
SCOTT GORDON, in his official and individual :
capacities                                :
5700 Wayne Avenue                         :
Philadelphia, PA 19144                    :
                                          :
and                                       :
                                          :
HILLARY MESERVE, in her official and      :
individual capacities                     :
5650 Sprague Street                       :
Philadelphia, PA 19138                    :
                                          :
and                                       :
                                          :
ERIC LANGSTON, in his official and individual :
capacities                                :
5650 Sprague Street                       :
Philadelphia, PA 19138                    :
                                          :

and                                              :
                                                 :
**MICHAEL PATRON, in his official and**          :
~~individual capacities~~                        :
~~5700 Wayne Avenue~~                             :
Philadelphia, PA 19144                           :
                                                 :
                          **Defendants.**        :
_____          :

## AMENDED COMPLAINT[1]

### NATURE OF THIS ACTION

1.      On May 27, 2016, a thirteen year-old girl in 7th grade, A.J., was sexually assaulted

by another student at Mastery Charter School Pastorius-Richardson Elementary in Philadelphia.

A video of the sexual assault was circulated among students and staff at the School.  Despite the

fact that there had been multiple previous incidents of sexual harassment and assault at the

School, the United States Department of Education, which investigated the incident, determined

that the School failed to enact and employ even the most basic of safeguards and procedures to

prevent and respond to such incidents, as required by federal law.  The School and its

administrators sought to deflect blame for their own failures and made the determination, based

on a bogus and faulty investigation, that the sexual incident was consented to by the thirteen

year-old girl and blamed her for the incident, further victimizing her in the process.  As a result,

A.J.'s grandmother and legal guardian, Rosemary Roussaw, brings this lawsuit against

Defendants and seeks damages for the severe and devastating harm caused to her granddaughter,

pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, the Civil Rights

Act of 1866, 42 U.S.C. §1983, as well as common law claims for intentional infliction of

emotional distress and breach of fiduciary duty.

_____

[1] This Amended Complaint includes the same factual allegations averred in the initial Complaint filed on April 5, 2019, to which Defendants filed an Answer on May 31, 2019.  This Amended Complaint is being filed pursuant to the Court's Orders of June 20 and June 27, 2019 for the sole purpose of correcting the names of the defendants.

## **PARTIES**

2.      Plaintiff Rosemary Roussaw ("Ms. Roussaw" or "Plaintiff") is the legal guardian and grandmother of A.J., a minor, residing at 6316 East Wister Street, Philadelphia, PA 19138. A.J. was born on February 28, 2003 and, at all times relevant hereto, was a thirteen (13) year old, female, seventh grade student at Mastery Charter School Pastorius-Richardson Elementary.

3.      Defendant, Mastery Charter High School (hereinafter "Mastery"), is a nonprofit corporation organized and existing under the laws of the Commonwealth of Pennsylvania. Mastery is the owner and operator of 24 charter schools in Pennsylvania and New Jersey, serving approximately 14,000 students and employing more than 1,700 employees. Its principal place of business is located at 5700 Wayne Avenue, Philadelphia, PA 19144.

4.      Defendant, Mastery Charter School Pastorius-Richardson Elementary, formerly known as Francis D. Pastorius- Mastery Charter School (hereinafter "Pastorius" or "the School"), is a nonprofit corporation organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Pastorius had approximately 600 students in kindergarten through 8th grade and was/is owned and operated by Defendant Mastery Charter High School.   Pastorius is located at 5650 Sprague Street, Philadelphia, PA 19138.

5.      Defendant, Scott Gordon, is an adult individual residing within the Commonwealth of Pennsylvania who, at all times relevant hereto, served as Chief Executive Officer of Defendant Mastery Charter High School and was acting under color of state law. As CEO of Mastery, at all times relevant hereto, Defendant Gordon oversaw and was primarily responsible for all customs, policies and procedures of Mastery and the School, including with respect to the requirements of Title IX.

3

6.      Defendant, Hillary Meserve, is an adult individual residing within the Commonwealth of Pennsylvania who, at all times relevant hereto, served as Principal of Defendant Pastorius and was acting under color of state law.

7.      Defendant, Eric Langston, is an adult individual residing within the Commonwealth of Pennsylvania who, at all times relevant hereto, served as Principal and/or Assistant Principal of Defendant Pastorius and was acting under color of state law.

8.      Defendant, Michael Patron ("Patron"), is an adult individual residing within the Commonwealth of Pennsylvania who, at all times relevant hereto, served as Director of Compliance of Defendant Mastery Charter High School and was acting under color of state law. At all times relevant hereto, Patron was responsible for ensuring Mastery and the School's compliance with the requirements of Title IX.

9.      At all times relevant hereto, Ms. Roussaw was also employed as a crossing guard outside of the School.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over Plaintiffs' claims for relief under 28 U.S.C. §§1331, 1337, 1343, 2201, and 2202, since those claims are based in part on violations of and arise under the laws of the United States, including the United States Constitution, 42 U.S.C. § 1983, and Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, and its implementing regulation, 34 C.F.R. Part 106.

11.     Jurisdiction is also invoked pursuant to 28 U.S.C. §1367 granting this Court supplemental or pendent jurisdiction over the state law claims asserted under the common law of the Commonwealth of Pennsylvania, including legal claims for breach of fiduciary duty and intentional infliction of emotional distress, because the state claims and federal claims are so

interrelated that they are the same case or controversy under Article III of the United States
Constitution.

12.     Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391 (b)
and (c) since Plaintiffs and Defendant reside in the Eastern District of Pennsylvania and since a
substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Eastern
District of Pennsylvania.

## THE SEXUAL ASSAULT

13.     On May 27, 2016, at Pastorius, A.J. was approached by a male, 15 year-old
student in eighth grade ("R.H."), in the School auditorium.  R.H. asked A.J. if he could have sex
with her, to which A.J. responded: "No."  Thereafter, R.H. persisted to which A.J. responded "I
can't.  I never did this before."  R.H. continued to persist by saying "it's ok." R.H. then pulled up
A.J.'s dress, pulled down her underwear and had sexual intercourse with A.J.

14.     A.J. did not consent to having sexual intercourse with R.H. through her words or
conduct and, at the age of 13, did not otherwise have the legal capacity to give her consent.

15.     Following the sexual assault, R.H. threatened A.J. and told her that "you better
not tell anybody" about this.

16.     Unbeknownst to A.J. at the time of the sexual assault, R.H. recorded a video on
his cell phone depicting him having sexual intercourse with A.J.

17.     A.J. was fearful and ashamed and did not say anything to anyone about the sexual
assault by R.H.

18.     Defendant Langston, the learned of the existence of the video on May 27, 2016-
the same day that the sexual assault occurred.

19.     Defendant Langston claimed to have conducted an investigation of the video upon learning of its existence, but he did not contact Ms. Roussaw about the video and the sexual encounter involving A.J. until June 9, 2016, *thirteen days after* he learned of the video.

20.     The video was distributed among multiple students at the School, without A.J. or Plaintiff's knowledge.

21.     The School's Principal, Defendant Hillary Meserve, admitted that she learned of the sexual incident "about a week later" when she was shown "a video of the incident on a student's cell phone that Mr. Langston showed me."

22.     On June 9, 2016, Ms. Roussaw was called to come to the School to meet with Defendant Langston. When she arrived in the School, she witnessed Defendant Langston showing the video on his cell phone to other individuals that were gathered around him. He then showed the video to Ms. Roussaw and told her that he had been in possession of the video for "about a week." Ms. Roussaw was devastated and distraught. Defendant Langston then brought Ms. Roussaw into a meeting in a conference room at the School with A.J., R.H., R.H's father, Ms. Roussaw's two daughters. Ms. Roussaw was questioned at the School by police officers who were called in by the School to investigate.

23.     Defendants callously dismissed the incident as "consensual," notwithstanding the fact that A.J. was only thirteen years old and stated that she told R.H. "no."

24.     Despite Defendants' conclusion that A.J. had consented to sexual intercourse (even though she was only thirteen years old and stated that she told R.H. "No"), Defendants acknowledged that A.J. did not consent to the videotaping.

25.     Although she was a victim of sexual assault, Defendants Langston and Meserve determined that A.J. should be suspended and was not permitted to return to School for the remainder of the school year.

26.     A.J. was forced to switch schools and is now in tenth grade at Martin Luther King, Jr. High School in Philadelphia.

## PRIOR SEXUAL ASSAULTS AT MASTERY

27.     Prior to the sexual assault of A.J., there were multiple sexual harassment and assault incidents at Mastery Schools that were known to Defendants, going back to 2008 or earlier.

28.     In 2008, as reported by the *Philadelphia Inquirer*, two eighth grade students engaged in sexual intercourse in the stairwell of the school, resulting in the expulsion of the male student. It was reported that the male student's mother "said a school employee told her that sexual activity is so rampant among some students that girls have been found with sexual contracts stipulating to whom they wanted to lose their virginity."

29.     Earlier in 2016, only months prior to the sexual assault on A.J., a 13 year-old, seventh grade student was sexually assaulted in the lunchroom at Pastorius Elementary. This incident was known to other students, staff and members of the School community.

30.     Despite the multitude of incidents of sexual misconduct and violence occurring at the School, all of which were known to other students, staff and members of the School community, Defendants failed to take prompt and effective steps to address the sexual violence among its children and the hostile environment to which they were exposed.

## INVESTIGATION OF THE SEXUAL ASSAULT BY THE U.S. DEPARTMENT OF EDUCATION, OFFICE OF CIVIL RIGHTS

31.     The United States Department of Education, Office of Civil Rights (OCR)

conducted an investigation of the sexual assault against A.J. at the School, and identified

multiple significant deficiencies and areas of non-compliance with Title IX.

32.     OCR determined that at the time of the sexual assault on A.J., Defendants did not

have a Title IX Coordinator; did not have any grievance procedures as required by Title IX; did

not have any policies or procedures for investigating reports of sexual assault or discrimination at

the School; did not have any policies or procedures in place to address sexual assault or

discrimination apart from its normal disciplinary policies and procedures; did not have any

policies or procedures in place for reporting about sexual assault or discrimination at the School;

did not provide any training to its students, administration, teachers and staff with respect to

sexual assault or discrimination as required by Title IX; and did not maintain records of incidents

of sexual assault or harassment.

33.     OCR further determined, in part, the following:

> Our investigation found that there were two separate incidents that
> constituted conduct of a sexual nature that should have triggered an investigation
> under Title IX: (1) the sexual encounter in the auditorium between the Student
> [A.J.] and the Responding Party [R.H.]; and (2) the Responding Party videotaping
> the sexual encounter in the auditorium without the Student's consent. *Our
> investigation found, however, that neither the Principal nor the Assistant
> Principal invoked Title IX during their investigation into each of these incidents.*
> Our investigation found that the video constituted conduct of a sexual
> nature and that the Assistant Principal immediately took action to investigate the
> video once he had notice of it. Mastery's written statement to OCR and the
> Student's witness statement indicate that the student did not consent to being
> videotaped; thus the evidence shows that the videotaping was unwelcome.
> However, *the evidence does not show that the School made a determination
> regarding whether the video created a sexually hostile environment for the
> Student, as required by Title IX.* Further, OCR has concerns because there is no
> indication that the School disciplined the Responding Party for his role in taking
> the video without the Student's consent or that the School took steps to provide
> services such as counseling to the Student as a result of her being videotaped
> without her consent and having that video distribute without her consent.

With respect to the sexual encounter, *our investigation found that the School did not consider Title IX in its investigation of the incident because, based on the facts it uncovered during its investigation (i.e. the video and information obtained from the Student, the Responding Party, and the Student's family members), it determined that the encounter was consensual and as such, did not constitute sexual harassment or sexual violence...* (*emphasis added*).

34.    In December 2017, Mastery and the United States Department of Education entered into a Resolution Agreement, in which Mastery acknowledged the multiple significant deficiencies and areas of non-compliance with Title IX, and agreed to do the following:

- Submit to the OCR for its review and approval draft Title IX grievance procedures to address complaints of sex discrimination (including sexual assault and sexual violence);

- Adopt and implement procedures and provide all students, parents/guardians and employees with written notice regarding the new grievance procedures for resolving Title IX complaints together with information on how to obtain a copy of the grievance procedures;

- Submit to the OCR for its review and approval a draft notice of nondiscrimination pursuant to 34 C.F.R. §106.9;

- Adopt and implement the notice of nondiscrimination and provide all students, parents/guardians and employees with written notice regarding the new notice of nondiscrimination;

- Develop and provide Title IX training to its Title IX Coordinator and any other Mastery employees who will be directly involved in processing, investigating and/or resolving complaints of sex discrimination (including sexual harassment) or who will otherwise assist in Mastery's compliance with Title IX;

9

- Provide Title IX training to all Mastery staff who interact with students on a regular basis;

- ~~Issue a written offer to pay for A.J.'s counseling/academic/therapy services for~~ the assessment and/or treatment of the lingering effects from the [sexual assault];

- Develop a centralized record-keeping process for documenting and tracking complaints of sexual harassment, including sexual assault; and

- Prepare a report summarizing all incidents alleging sexual harassment, including sexual assault, investigated at the School during the proceeding academic year.

## DAMAGES

35.    As a result of the sexual assault and Defendants' deliberate indifference to A.J.'s rights, including the Defendants' publication and circulation of the video depicting the sexual assault, A.J. has suffered severe, life-altering and catastrophic damages, including Post Traumatic Stress Disorder, Major Depressive Disorder, anxiety, emotional distress, fear, embarrassment, humiliation and other severe developmental, psychiatric, social and emotional problems.

36.    These problems experienced by A.J. have manifested themselves in very serious and life-threatening ways, necessitating long-term and emergency medical and psychiatric treatment and behavioral therapy.

## COUNT I

### VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
### 20 U.S.C. § 1681 *et seq.*
### Plaintiff v. Defendants Mastery and Pastorius

37.    Plaintiff restates and realleges the above preceding paragraphs as though set forth here in full.

38.     Title IX of the Education Amendments of 1972 (Title IX) enacted broad

prohibition against sex discrimination and harassment by a school receiving federal financial

assistance, providing in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from
> participation in, be denied the benefits of, or be subjected to discrimination under
> any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

39.     Defendants own and operate a public charter school that receives federal financial

assistance, and is therefore subject to the requirements of Title IX.

40.     Defendants were deliberately indifferent to the sexual harassment and assault

against A.J.

41.     The sexual harassment and assault against A.J., as well as other incidents of

sexual harassment and assault of which Defendants had actual knowledge, was severe, pervasive

and objectively offensive.

42.     The sexual harassment and assault against A.J. created a hostile environment at

the School and interfered with A.J's ability to participate in and benefit from the School's

educational program.

43.     Defendant's inappropriate and pathetic response to the sexual harassment and

assault against A.J. further created a hostile environment for A.J.

44.     Defendants had an official policy of deliberate indifference to providing adequate

training or guidance that is obviously necessary for investigating and responding to reports of

sexual discrimination, harassment and assault.

11

45.     Defendants' lack of training and guidance with respect to sexual harassment and discrimination made students, including A.J., especially vulnerable to sexual harassment and discrimination at Defendants' school.

46.     Defendants' failure to investigate and take corrective measures in response to the sexual assault and harassment of A.J. at the School was clearly unreasonable in light of the circumstances known to the School.

47.     Defendants had actual knowledge of prior incidents of sexual assault and harassment at the School and took no or insufficient action to implement trainings or policies to protect students from this known and foreseeable risk.

48.     Despite the legal obligation to do so, Defendants did not designate or employ a Title IX Coordinator to coordinate efforts to comply with and carry out its responsibilities under Title IX, as required by Title IX's implementing regulation at 34 C.F.R. § 106.8(a).

49.     Despite the legal obligation to do so, Defendants enacted no grievance procedures to address complaints of sex discrimination (including sexual assault and sexual violence), as required by Title IX's implementing regulation at 34 C.F.R. § 106.8(b).

50.     Despite the legal obligation to do so, Defendants did not communicate a Notice of Nondiscrimination to notify students, parents, guardians and employees that the School does not discriminate on the basis of sex and referring inquiries to the School's Title IX Coordinator, as required by 34 C.F.R. § 106.9.

51.     Despite the legal obligation to do so, Defendants did not develop or provide any training with respect to sex discrimination (including sexual assault and sexual violence) to its Title IX Coordinator or any other employees or personnel.

52.     Despite the legal obligation to do so, Defendants did not develop or maintain any record-keeping process for documenting and tracking incidents or complaints of sex discrimination, including sexual assault and sexual violence.

53.     The described unlawful practices by Defendants were intentional, deliberate, willful and were with malice or reckless indifference to Plaintiffs' rights protected by the laws of the United States, as well as the laws of the Commonwealth of Pennsylvania.

54.     Defendant's breaches of their legal obligations under Title IX directly lead to the sexual discrimination and assault on A.J., and has resulted in severe, life-altering and catastrophic damages.

WHEREFORE, Plaintiff Rosemary Roussaw, as legal guardian of A.J., A Minor, demands judgment in her favor and against Defendants and requests an award of damages including, but not limited to compensatory damages, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted by law and as this court deems just and appropriate.

## COUNT II

### VIOLATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION and THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. §1983
### Plaintiff v. All Defendants

55.     Plaintiff restates and realleges the above preceding paragraphs as though set forth here in full.

56.     A.J. has a right, guaranteed by the Fourteenth Amendment of the United States Constitution, as a public school student under the care and supervision of Defendants, to be free from sexual discrimination, harassment and assault, personal security, bodily integrity and Equal Protection under the law.

57.     All Defendants were state actors and/or were acting under color of state law.

13

58.     Sexual discrimination, harassment and assault is a serious and prevalent problem in public schools, including specifically at Pastorius and Mastery Schools, that requires a level of training, education and preparation that is commensurate with the harm that such conduct causes to victims, schools and communities.

59.     Defendants were deliberately indifferent to the problems and obvious risks of harm associated with the serious and prevalent problems of sexual discrimination, harassment and assault at Pastorius, and created and maintained a policy and custom of inadequate training, supervision, reporting, investigation, record keeping, and response to address the serious problems that lead to sexual discrimination, harassment and assault of students.

60.     Defendants had notice of previous incidents of sexual discrimination, harassment and assault of students at the School at failed to take reasonable and appropriate measures to provide training, supervision, reporting, investigation, record keeping, and response to prevent and respond to future incidents of sexual discrimination, harassment and assault of students at the School.

61.     Defendants deliberate indifference to the need for training, supervision, reporting, investigation, record keeping, and response was so obvious and deficient, it was foreseeable and likely to result in the violation of students' rights, including specifically A.J.

62.     Defendants created and maintained a policy, custom and practice that were inadequate to providing training or guidance and for investigating and responding to reports of sexual discrimination, harassment and assault at the School.

63.     Defendants created and maintained a policy, custom and practice that were inadequate to allow for appropriate reporting of sexual discrimination, harassment and assault at the School.

64.     Defendants created and maintained a policy, custom and practice that were inadequate to monitor and supervise students to prevent incidents of sexual discrimination, harassment and assault at the School.

65.     Defendants created and maintained a policy, custom and practice that were inadequate to provide emotional support, counseling and a safe environment for victims of sexual discrimination, harassment and assault at the School.

66.     Defendants created and maintained a policy, custom and practice of blaming victims of sexual discrimination, harassment and assault at the School.

67.     Defendants were not appropriately trained on reporting incidents of sexual discrimination, harassment and assault at the School.

68.     Defendants were not appropriately trained to address and respond to incidents of sexual discrimination, harassment and assault at the School.

69.     Defendants were not appropriately trained to identify incidents of sexual discrimination, harassment and assault at the School.

70.     The inadequate policies, customs and practices created and maintained by Defendants directly lead to the sexual discrimination and assault on A.J., and has resulted in severe, life-altering and catastrophic damages.

WHEREFORE, Plaintiff Rosemary Roussaw, as legal guardian of A.J., A Minor, demands judgment in her favor and against Defendants and requests an award of damages including, but not limited to compensatory damages, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted by law and as this court deems just and appropriate.

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### ~~Plaintiff v. All Individual Defendants~~

71.     Plaintiff restates and realleges the above preceding paragraphs as though set forth here in full.

72.     Defendants acted recklessly or intentionally by discriminating against A.J. failing to timely and appropriately responding to threats to A.J. safety.

73.     Defendants acted recklessly or intentionally by allowing for and facilitating the distribution and publication of the video depicting the sexual assault of A.J.

74.     Defendants' conduct was extreme and outrageous, especially considering that the School holds itself out to its students, families and the public as a safe environment for children.

75.     As a direct and proximate result of the extreme and outrageous conduct of Defendants as set forth above, A.J. has suffered severe emotional distress, requiring intensive psychiatric treatment.

76.     The extreme and outrageous conduct of Defendants, as set forth above, which was committed with a reckless indifference to the rights of A.J., warrant the imposition of punitive damages.

WHEREFORE, Plaintiff Rosemary Roussaw, as legal guardian of A.J., A Minor, demands judgment in her favor and against Defendants and requests an award of damages including, but not limited to compensatory damages, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted by law and as this court deems just and appropriate.

## COUNT IV

### BREACH OF FIDUCIARY DUTY
#### ~~Plaintiff v. All Individual Defendants~~

77.    Plaintiff restates and realleges the above preceding paragraphs as though set forth here in full.

78.    A fiduciary relationship exists between the individual defendants and A.J., as the individual defendants exercise overmastering influence over A.J.

79.    A.J. was in a position of dependence and placed her trust in the individual defendants to maintain a safe and discrimination-free school environment.

80.    Individual Defendants had a fiduciary duty and obligation to act in the best interests of A.J., including but not limited to, not discriminating against A.J., ensuring A.J.'s safety at school and timely and appropriately responding to threats to A.J. safety.

81.    The Individual Defendants intentionally and recklessly breached their fiduciary duty to A.J. by knowingly discriminating against A.J., failing to ensure A.J.'s safety at school and failing to timely and appropriately respond to threats to A.J. safety and well-being, including the sexual assault and the distribution and publication of the video.

82.    A.J. suffered severe and permanent damages, all of which were foreseeable, as a result of Defendant's breach of fiduciary duty.

WHEREFORE, Plaintiff Rosemary Roussaw, as legal guardian of A.J., A Minor, demands judgment in her favor and against Defendants and requests an award of damages including, but not limited to compensatory damages, punitive damages, reasonable attorneys' fees and costs, and other relief as this court deems appropriate.

### JURY DEMAND

The Plaintiff demands trial by jury of all issues triable of right to a jury.

## CERTIFICATION

I hereby certify that Plaintiff has not brought a similar or related lawsuit encompassing the claims brought in this matter.

Respectfully Submitted,

**SCHATZ & STEINBERG, P.C.**

By:

Steven J. Schatz, Esquire (Pa ID #84509)
1500 JFK Boulevard, Suite 1300
Philadelphia, PA 19102
215-845-0250
sschatz@s2firm.com

**THE PEARLMAN LAW FIRM, PLLC**

By:      /s/ Jason L. Pearlman
Jason L. Pearlman, Esquire (Pa ID #93879)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004
610-660-7793
jpearlman@pearlmanlawfirm.com

DATED:  July 10, 2019

*Attorneys for Plaintiff Rosemary Roussaw as
Legal Guardian of A.J., A Minor*

18