IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROSEMARY ROUSSAW                              :
  *AS LEGAL GUARDIAN OF A.J.*,            :
  *A MINOR*,                              :
                                               :     CIVIL ACTION
    v.                                  :
                                                :     NO. 19-1458
MASTERY CHARTER HIGH SCHOOL, ET AL.  :

**MEMORANDUM**

**SURRICK, J.**                                                                    **MAY 22, 2020**

        Presently before the Court is Defendants' Motion for Judgment on the Pleadings.  (Defs.'
Mot., ECF No. 23.)  For the following reasons, Defendants' Motion will be granted in part and
denied in part.

**I.      FACTUAL AND PROCEDURAL BACKGROUND[1]**

        In this action, A.J., a thirteen-year-old girl in 7th grade, was subjected to a sexual assault
by an older classmate.  (Am. Compl. ¶¶ 1-2, ECF No. 20.)  Her legal guardian brings claims
against A.J.'s school and individuals in charge there under Title IX and Section 1983.  Plaintiff
also brings Pennsylvania state law claims for intentional infliction of emotional distress and
breach of fiduciary duty.

        The sexual assault occurred on May 27, 2016, in the auditorium at Mastery Charter
School Pastorius-Richardson Elementary ("Pastorius Elementary") in Philadelphia,

---

[1] The factual allegations in the Amended Complaint are accepted as true and construed in
the light most favorable to Plaintiff as the non-moving party.  *DiCarlo v. St. Mary Hosp.*, 530
F.3d 255, 262-63 (3d Cir. 2008).

Pennsylvania, where A.J. was a student.[2]  (Am. Compl. ¶¶ 1-2, 13.)  That day, R.H., a fifteen-year-old boy in 8th grade at Pastorius Elementary, asked A.J. to have sex.  (*Id.* ¶ 13.)  A.J. told him "No."  (*Id.*)  R.H. then pulled up A.J.'s dress, pulled down A.J.'s underwear, and had non-consensual sexual intercourse with her.  (*Id.* at ¶¶ 13-14.)  R.H. then threatened A.J. and told her: "you better not tell anybody."  (*Id.* ¶ 15.)  Fearful and ashamed, A.J. did not tell anyone about the sexual assault.  (*Id.* ¶ 17.)

R.H. had surreptitiously used his cell phone to record a video of the incident.  (*Id.* ¶ 16.)  The video circulated among multiple students at Pastorius Elementary.  (*Id.* ¶ 20.)

That same day, Assistant Principal Eric Langston learned of the video of R.H.'s sexual assault of A.J.  (*Id.* ¶ 18.)  Langston investigated the video.  (*Id.* ¶¶ 1, 19.)  One week after the sexual assault, Langston showed the video to Principal Hillary Meserve.  (*Id.* ¶ 21.)  Meanwhile, the sexual assault and the video were distracting A.J. at school.  (*Id.* ¶¶ 42-43.)

Thirteen days after the sexual assault, Langston called Plaintiff Rosemary Roussaw, A.J.'s grandmother and legal guardian, and arranged a meeting at Pastorius Elementary.[3]  (Am.

---

[2] Pastorius Elementary is a non-profit corporation existing under the laws of the Commonwealth of Pennsylvania.  (Am. Compl. ¶ 4.)  It has approximately 600 students in kindergarten through 8th grade.  (*Id.*)  At all relevant times, Hillary Meserve was Principal of Pastorius Elementary, (*Id.* ¶ 6), and Eric Langston was Assistant Principal of Pastorius Elementary.  (*Id.* ¶ 7.)  Pastorius Elementary received federal funding.  (*Id.* ¶ 39.)

Pastorius Elementary is owned and operated by Mastery Charter High School ("Mastery").  (*Id.* ¶ 4.)  Mastery is a non-profit corporation existing under the laws of the Commonwealth of Pennsylvania.  (*Id.* ¶ 3.)  Mastery owns and operates twenty-four charter schools in Pennsylvania and New Jersey.  (*Id.*)  At all relevant times, Scott Gordon was Chief Executive Officer of Mastery, (*Id.* ¶ 5), and Michael Patron was Director of Compliance of Mastery.  (*Id.* ¶ 8.)  "Gordon oversaw and was primarily responsible for all customs, policies and procedures of Mastery and [Pastorius Elementary], including with respect to the requirements of Title IX."  (*Id.* ¶ 5.)  "Patron was responsible for ensuring Mastery and [Pastorius Elementary's] Compliance with the requirements of Title IX."  (*Id.* ¶ 8.)

[3] Plaintiff was employed as a crossing guard outside of Pastorius Elementary at the time.  (Am. Compl. ¶ 9.)

Compl. ¶¶ 2, 22.)  When Plaintiff arrived at Pastorius Elementary for the meeting, she saw Langston showing the video to some people.  (*Id.* ¶ 22.)  Langston then showed the video to Plaintiff.  (*Id.*)  Plaintiff was distraught.  (*Id.*)  Langston then brought Plaintiff into a conference room with A.J., Plaintiff's two daughters, R.H., R.H.'s father, and police officers.  (*Id.*)  A.J. told Langston and Meserve that she had told R.H. "No."  (*Id.* ¶¶ 23-24.)  Langston and Meserve concluded that the sexual assault was consensual, but that the video recording and sharing were not.  (*Id.* ¶¶ 23-24.)  Langston and Meserve suspended A.J. for the remainder of the school year. (*Id.* ¶ 25.)  Langston and Meserve did not punish R.H. or provide A.J. with counseling services. (*Id.* ¶ 33.)  Langston, Meserve, Patron, and Gordon decided to handle the situation in this matter in order to deflect blame from themselves for their own failures.  (*Id.* ¶ 1.)

As a result of the sexual assault and the publication and circulation of the video, A.J. suffered post-traumatic stress disorder, major depressive disorder, anxiety, emotional distress, fear, embarrassment, humiliation, and other severe developmental, psychiatric, social, and emotional problems.  (*Id.* ¶ 35.)  To deal with these serious problems, A.J. has had emergency and long-term medical and psychiatric treatment and behavioral therapy.  (*Id.* ¶¶ 36, 75.)  A.J. was forced to switch schools.  (*Id.* ¶ 26.)

The United States Department of Education, Office of Civil Rights ("Office of Civil Rights") investigated the sexual assault of A.J. and the video.  (*Id.* ¶ 31.)  The Office of Civil Rights identified the following Title IX deficiencies at Pastorius Elementary:  lack of a Title IX Coordinator; lack of grievance procedures; lack of policies or procedures for investigating, addressing, and reporting sexual assault or discrimination; lack of sexual assault or discrimination training for students, administration, teachers and staff; and failure to maintain records of sexual assault or harassment incidents.  (*Id.* ¶ 32.)  The Office of Civil Rights also

determined that A.J.'s sexual encounter with R.H. and the video should have triggered an investigation under Title IX, but that neither Langston nor Meserve invoked Title IX during their investigation.  (*Id.* ¶ 33.)  The Office of Civil Rights was also concerned that Pastorius Elementary did not discipline R.H. and did not provide counseling services to A.J.  (*Id.*)

In December of 2017, Mastery and the United States Department of Education entered into a Resolution Agreement.  (*Id.* ¶ 34.)  Mastery acknowledged the deficiencies and agreed to comply with Title IX going forward.  (*Id.*)  Mastery also agreed to issue a written offer to pay for the assessment and treatment of the lingering effects from A.J.'s sexual assault and harassment. (*Id.*)

Plaintiff alleges that, prior to A.J.'s sexual assault, Mastery, Pastorius Elementary, Gordon, Patron, Meserve, and Langston were aware of multiple incidents of sexual harassment and sexual assault at Pastorius Elementary.  (*Id.* ¶¶ 27, 41, 47.)  For example, in 2008, the *Philadelphia Inquirer* featured an article about two 8th grade students engaging in sexual intercourse in a stairwell at Pastorius Elementary.  (*Id.* ¶ 28.)  The male student was expelled. (*Id.*)  The article also reported that, according to a school employee, "sexual activity [was] so rampant among some students that girls [had] been found with sexual contracts stipulating to whom they wanted to lose their virginity."  (*Id.*)  In addition, in early 2016, a thirteen-year-old student in 7th grade was sexually assaulted in the lunchroom at Pastorius Elementary.  (*Id.* ¶ 29.) According to Plaintiff, Defendants did not take prompt and effective steps to address sexual misconduct among students at Pastorius Elementary.[4]  (Am. Compl. ¶ 30.)

---

[4] Defendants' Motion relies on several factual allegations that were not contained in the Amended Complaint, such as that: Langston and Meserve were initially unable to identify the students in the video; Langston questioned A.J. and R.H. but they denied that anything had happened; R.H. was suspended for the rest of the school year and was not permitted to participate in graduation proceedings; affirmative steps were taken to prevent further harassment;

On July 10, 2019, Plaintiff filed an Amended Complaint. The Amended Complaint alleges the following four counts: violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, against Mastery and Pastorius Elementary (Count I); violation of civil rights pursuant to 42 U.S.C. § 1983 against all Defendants (Count II); and Pennsylvania state law claims against all individual Defendants of intentional infliction of emotional distress ("IIED") (Count III) and breach of fiduciary duty (Count IV).

## II.        LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where the sufficiency of a complaint is challenged under Rule 12(c), courts evaluate the motion under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). A motion for judgment on the pleadings will be granted "only if, viewing all the facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).

In evaluating a Rule 12(c) motion, the Court must "accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements." *DiCarlo*, 530 F.3d at 262-63. The pleadings must contain sufficient factual allegations so as to state a facially plausible claim

---

and Plaintiff declined an offer to press criminal charges against R.H. and instead asked R.H. to mow her lawn over the summer as punishment. (Defs.' Mot. 7, 16.) These factual allegations were not contained in the Amended Complaint. We therefore did not include them in the factual background or consider them in our analysis.

for relief.  *See, e.g.*, *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009).

A claim is plausible "'when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.        DISCUSSION

Plaintiff brings claims against Defendants under Title IX and Section 1983, and for IIED

and breach of fiduciary duty.  Defendants include Mastery and its CEO Scott Gordon and its

Director of Compliance Michael Patron, as well as Pastorius Elementary and its Principal Hillary

Meserve and its Assistant Principal Eric Langston.  Defendants seek dismissal of all claims,

contending that Plaintiff has failed to allege sufficient allegations.  Defendants also argue that

Plaintiff is not entitled to punitive damages.  We will address each count in turn.

### A.        Title IX Claims against Mastery and Pastorius Elementary (Count I)

Plaintiff alleges Title IX claims against Mastery and Pastorius Elementary.  Title IX

states that: "No person in the United States shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  "Congress

enacted Title IX in 1972 with two principal objectives in mind:  to avoid the use of federal

resources to support discriminatory practices and to provide individual citizens effective

protection against those practices."  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286,

(1998) (internal citation and quotation marks omitted).

Plaintiff alleges that Pastorius Elementary receives federal financial assistance and that

Mastery owned and operated Pastorius Elementary.  Plaintiff's Amended Complaint adequately

pleads that Mastery and Pastorius Elementary are subject to Title IX and its regulations.

To plead a Title IX claim against a school for student-on-student sexual harassment, a plaintiff must plead sexual harassment "that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim students are effectively denied equal access to an institution's resources and opportunities." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 205-06 (3d Cir. 2001) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 651 (1999)). "This determination 'depends on a constellation of surrounding circumstances, expectations, and relationships,' including, but not limited to, the ages of the harasser and the victim, and the number of individuals involved." *Id.* at 206 (quoting *Davis*, 526 U.S. at 651).

"[P]rivate damages actions against the school are limited to cases [in] which the school 'acts with deliberate indifference to known acts of harassment,' and those acts have 'a systemic effect on educational programs and activities.'" *Id.* (quoting *Davis*, 526 U.S. at 633, 653). "[A] [federal funding] recipient's damages liability [is limited] to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. Only then can the recipient be said to expose its students to harassment or cause them to undergo it under the recipient's programs." *Davis*, 526 U.S. at 645 (internal quotation marks omitted). "Where, as here, the misconduct occurs during school hours and on school grounds . . . the misconduct is taking place under an operation of the funding recipient. . . . In these circumstances, the recipient retains substantial control over the context in which the harassment occurs . . . [and] the harasser." *Id.* at 646 (internal quotation marks omitted). "Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the

amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment." *Id*. at 652-53.  Schools may avoid Title IX damages liability by "merely respond[ing] to known peer harassment in a manner that is not clearly unreasonable." *Id*. at 649.  "[T]he deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Id*. at 645 (internal quotations omitted).

The Supreme Court has held "that a damages remedy will not lie under Title IX unless an [appropriate person] who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [federal funding] recipient's behalf has *actual knowledge* of discrimination in the [federal funding] recipient's programs and fails adequately to respond. . . . [T]he response must amount to deliberate indifference to discrimination." *Gebser*, 524 U.S. at 290 (emphasis added).  The Supreme Court specifies actual knowledge because "Congress did not intend to allow recovery in damages [under Title IX] where liability rests solely on principles of vicarious liability or constructive notice." *Id.* at 288.  The Third Circuit has instructed that "a school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be 'an appropriate person' under Title IX." *Warren v. Reading Sch. Dist.*, 278 F.3d 163, 171 (3d Cir. 2002).  We can infer that Principal Meserve and Assistant Principal Langston were "entrusted with the responsibility and authority normally associated with [their] position[s]" based on the factual allegations that they investigated the video, contacted the police, initiated the meeting with the students and their families, attended the meeting, and dispensed A.J.'s punishment.  *See id.*  Accordingly, we consider Meserve and Langston "appropriate persons" under Title IX at this juncture.  Our Title IX analysis will therefore focus on the actual knowledge of Meserve and Langston and their responses.

Mastery and Pastorius Elementary argue that we should dismiss Plaintiff's Title IX claim because Plaintiff's Amended Complaint does not show deliberate indifference.  Plaintiff responds that deliberate indifference is evident in: (1) Mastery and Pastorius Elementary's Title IX deficiencies; (2) their failure to address prior student-on-student sexual misconduct at Pastorius Elementary; and (3) their mishandling of the sexual harassment of A.J..  We address each basis for Title IX liability in turn.

### 1.      Title IX Deficiencies

Plaintiff points to Mastery and Pastorius Elementary's Title IX deficiencies identified by the Office of Civil Rights.  The Supreme Court has held that a school's failure to have a sexual harassment policy and grievance procedures, alone, does not establish actual notice and deliberate indifference, nor does it constitute discrimination under Title IX.  *Gebser*, 524 U.S. at 291-92; *see also O'Hara v. Colonial Sch. Dist.*, No. 99-399, 2002 U.S. Dist. LEXIS 12153, at *20-22 (E.D. Pa. Mar. 25, 2002) ("Plaintiffs' allegation that Defendants 'failed to implement and publish a sexual harassment policy and establish a grievance procedure' does not state a claim for relief.").  Accordingly, our analysis as to this basis for Title IX liability ends here.  However, the Supreme Court left open the possibility that such a failure could be among the factors contributing to a finding of liability under Title IX.  Although Mastery and Pastorius Elementary's Title IX deficiencies are not themselves dispositive, we will consider them, among other factors, in our analysis of Plaintiff's other bases for Title IX liability.

### 2.      Failure to Address Prior Student-On-Student Sexual Misconduct at Pastorius Elementary

We consider first what prior acts of student-on-student sexual misconduct at Pastorius Elementary Principal Meserve and Assistant Principal Langston had actual knowledge of. Plaintiff alleges that Meserve and Langston had actual knowledge that:  (1) in 2008 two students

engaged in sexual intercourse in the stairwell and the male student was expelled; (2) in 2008 "sexual activity [was] so rampant among some students that girls [had] been found with sexual contracts stipulating to whom they wanted to lose their virginity;" and (3) in 2016 a 7th grade student was sexually assaulted in the lunchroom.  (Am. Compl. ¶¶ 28-29.)

We next consider the reasonableness of Meserve and Langston's responses to these prior instances of student-on-student sexual misconduct at Pastorius Elementary.  Meserve and Langston acted unreasonably.  In light of the 2008 stairwell incident, the overall rampant student-on-student sexual activity, the virginity contracts, and the 2016 lunchroom sexual assault, Meserve and Langston's failure to institute *any* policies, procedures, or training required by Title IX was an unreasonable response.  As Principal and Assistant Principal of an elementary school with 600 children in kindergarten through 8th grade, Meserve and Langston should have been aware of Title IX and its requirements.  In light of all these instances of student-on-student sexual misconduct, Meserve and Langston should have realized that Pastorius Elementary needed to comply with Title IX.

Next we consider whether these instances of sexual misconduct were severe, pervasive, and objectively offensive.  The fact that minor students were engaging in sexual intercourse, consensual or non-consensual, on school grounds and were exchanging virginity contracts constitutes severe, pervasive, and objectively offensive sexual misconduct.

Next we consider whether Meserve and Langston's alleged deliberate indifference to prior instances of student-on-student sexual misconduct caused A.J. "to undergo harassment or ma[d]e [her] liable or vulnerable to it."  *See Davis*, 526 U.S. at 645.  A.J. was impacted by Meserve and Langston's failure to comply with Title IX.  For example, Meserve and Langston's failure to disseminate a policy against sex discrimination may possibly explain why R.H.

heedlessly assaulted A.J. on school grounds and shared the video with his classmates.  Also, Meserve and Langston's failure to disseminate grievance procedures for complaints of sexual harassment explains, in part, why A.J. did not report the sexual assault.  Moreover, Meserve and Langston's failure to institute policies, procedures, and training required by Title IX could explain, in part, why they waited thirteen days to contact A.J.'s legal guardian and failed to provide A.J. with counseling.

Moreover, as Principal and Assistant Principal, Meserve and Langston exercised substantial control over the grounds of Pastorius Elementary and its students.  *See id.* at 646.

Finally, Meserve and Langston's deliberate indifference to prior instances of student-on-student sexual misconduct deprived A.J. of access to educational opportunities and benefits.  A.J. was deprived initially when Meserve and Langston failed to timely and reasonably address her sexual assault and the video for thirteen days.  During those thirteen days, A.J. was subjected to a hostile environment at school where she was vulnerable to her assailant and her peers, afraid, ashamed, embarrassed, and humiliated.  A.J. was further deprived when she was suspended for the rest of the school year and was forced to switch schools.

Accepting as true all the factual allegations in the Amended Complaint and drawing all plausible inferences in Plaintiff's favor, we are compelled to conclude that Plaintiff has sufficiently pleaded a Title IX claim against Mastery and Pastorius Elementary premised on Meserve and Langston's failure to address prior instances of student-on-student sexual misconduct at Pastorius Elementary.

### 3.    Mishandling of the Sexual Harassment of A.J.

A.J.'s sexual harassment consisted of: (1) the sexual assault in the auditorium; (2) the surreptitious video recording; (3) the non-consensual video sharing; and (4) R.H.'s threat to A.J..

Plaintiff sufficiently pleaded that Principal Meserve and Assistant Principal Langston had actual knowledge of the sexual assault, the video recording, and the video sharing, but not the threat. Even though A.J. was too afraid to tell anyone what R.H. had done to her, Langston became aware of the video the day that it was recorded. Meserve became aware of the video one week later. Langston and Meserve initiated and attended a meeting where the video and sexual assault were discussed. A.J. told Meserve and Langston that she had told R.H. "No." Langston showed the video to Meserve, Plaintiff, and other people in his office. Meserve and Langston concluded that the sexual intercourse was consensual, but the video recording and video sharing were not. Based on these factual allegations, Meserve and Langston had actual knowledge of the sexual assault, the video recording, and the video sharing. However, as there are no allegations that A.J. told anyone at the meeting about R.H.'s threat, we cannot conclude that Meserve and Langston had actual knowledge of the threat.

Meserve and Langston's response to the sexual assault, the video recording, and the video sharing showed deliberate indifference in a number of ways. To begin with, their unexplained delay in notifying A.J.'s legal guardian was unreasonable under the circumstances. Langston became aware of the sexual assault and the video the same day that the video was recorded, yet he did not contact A.J.'s legal guardian until later. Meserve became aware of the sexual assault and the video a week later, yet she did not contact A.J.'s legal guardian either. Moreover, their failure to timely notify A.J.'s legal guardian is even more unreasonable in light of the fact that she was easily accessible to them. Plaintiff was a crossing guard located right outside of Pastorius Elementary at the time. Second, it was unreasonable for Langston and Meserve to conclude that the sexual assault was consensual if, as Plaintiff alleges, Langston and Meserve knew that A.J. had told R.H. "No." Third, it was unreasonable for Langston and

Meserve to punish A.J. and not R.H..  It is difficult to comprehend why Langston and Meserve concluded that the video recording and the video sharing were non-consensual but then decided to punish the victim and not the perpetrator.  Fourth, it was also unreasonable for Langston and Meserve to not provide A.J. with counseling after having found that the video was recorded and circulated without her consent.  At this juncture, we reserve judgment on whether it was unreasonable for Langston to show the video to other people gathered in his office because Plaintiff has not alleged why Langston did this.  Langston may have shown the video to other people as part of the school investigation or the police investigation.

When we consider the totality of the factual allegations, it is clear that the sexual harassment of A.J. was severe, pervasive, and objectively offensive.  R.H.'s sexual assault of A.J. was invasive and unwelcome:  R.H. pulled up A.J.'s dress, pulled down A.J.'s underwear, and engaged in sexual intercourse with A.J., all without A.J.'s consent.[5]  At the time, A.J. was only thirteen years old and her assailant was two years older.  Unfortunately, the sexual assault in the auditorium was not the entire extent of the sexual harassment that A.J. endured.  In addition, R.H. recorded a video of the sexual assault and circulated it among several students, again all without A.J.'s consent.  A.J. was afraid, embarrassed, and humiliated.

Meserve and Langston's alleged deliberate indifference caused A.J. "to undergo harassment or ma[d]e [her] liable or vulnerable to it."  *See Davis*, 526 U.S. at 645.  For thirteen

---

[5] On a motion for summary judgment, Defendants may present evidence disputing this factual allegation.  *See*, *e.g.*, *Lockhart v. Willingboro High Sch.*, No. 14-3701, 2017 U.S. Dist. LEXIS 161993, at *13-16 (D.N.J. Sep. 29, 2017); *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 366-67 (W.D. Pa. 2008); *Bostic v. Smyrna Sch. Dist.*, No. 01-0261, 2003 U.S. Dist. LEXIS 3458, at *18-19 (D. Del. Feb. 24, 2003).  However, at this juncture, we must accept all Plaintiff's well-pleaded factual allegations as true.  Plaintiff pleads that "A.J. did not consent to having sexual intercourse with R.H. through her words or conduct."  (Am. Compl. ¶ 14.)

days, A.J. attended Pastorius Elementary and Meserve and Langston took no action to address

the sexual assault or the video.  For thirteen days, A.J. was vulnerable to another sexual assault

by R.H..  For thirteen days, A.J. was vulnerable to bullying as her peers continued viewing and

sharing the video of her sexual assault.  Although Plaintiff does not explicitly plead that A.J. was

vulnerable to a subsequent sexual assault or bullying, it is reasonable to infer A.J.'s vulnerability

during this time.

Plaintiff has sufficiently pleaded that Meserve and Langston had the ability to exercise

substantial control over the individuals involved and the context.  *See id*. at 646.  The sexual

assault occurred between two students and on school grounds in the school auditorium.  The

video was recorded by a student and circulated among multiple students.  Langston obtained

access to the video through a student's cellphone.  Moreover, Meserve and Langston

demonstrated their substantial control over the individuals involved and the context by calling a

meeting with A.J. and R.H. and their families and the police, and by suspending A.J. for the rest

of the school year.

Finally, A.J.'s sexual harassment deprived her of access to educational opportunities and

benefits.  A.J. was deprived initially when Meserve and Langston failed to timely and reasonably

address her sexual assault and the video for thirteen days.  During those thirteen days, A.J. was

subjected to a hostile environment at school where she was vulnerable to her assailant and her

peers, afraid, ashamed, embarrassed, and humiliated.  During those thirteen days, A.J. was

distracted.  A.J. was further deprived when she was suspended for the rest of the school year and

was forced to switch schools.

Accepting as true all the factual allegations in the Amended Complaint and drawing all

plausible inferences in Plaintiff's favor, it is clear that Plaintiff has sufficiently pleaded a Title IX

14

claim against Mastery and Pastorius Elementary premised on the mishandling of A.J.'s sexual harassment.[6]

Mastery and Pastorius Elementary argue that Title IX does not permit an award of punitive damages.  Plaintiff appears to have abandoned her demand for punitive damages under Title IX because she does not respond to this argument.  *See*, *e.g.*, *Jeannot v. Phila. Hous. Auth.*, No. 18-1977, 2018 U.S. Dist. LEXIS 169686, at *14 (E.D. Pa. Oct. 2, 2018) ("At the outset, we note that [the plaintiff] fails to respond to [the defendants'] arguments concerning dismissing his claim. . . .  Thus, [the plaintiff] has effectively abandoned his [] claim."); *Baldonado v. Avrinmeritor, Inc*., No. 13-833, 2014 U.S. Dist. LEXIS 69231, at *30 (D. Del. May 20, 2014) ("here the Court determines that because [the plaintiffs] have failed to at all address this challenge to the Complaint, [the plaintiffs] have abandoned their [] claim against [the defendants].").  In any event, Mastery and Pastorius Elementary are immune to punitive damages on Title IX claims.  District courts within this Circuit have held that municipalities are immune to punitive damages on Title IX claims.  *See Doe v. Allentown Sch. Dist.*, No. 06-1926, 2009 U.S. Dist. LEXIS 19418, at *22 (E.D. Pa. Feb. 26, 2009); *Dawn L. v. Greater Johnstown Sch. Dist.*, 614 F. Supp. 2d 555, 573 (W.D. Pa. 2008); *Crawford v. Sch. Dist. of Philadelphia*, No. 98-1851, 1998 U.S. Dist. LEXIS 8064 at *5 (E.D. Pa. June 3, 1998).  District courts within this Circuit have also considered charter schools to be municipalities.  *Luu v. Esterly*, 367 F. Supp. 3d 335, 349 (E.D. Pa. 2019); *Schienblum v. Lehigh Valley Charter Sch. for the Arts*, No. 15-6433, 2016 U.S. Dist. LEXIS 176424, at *12 (E.D. Pa. Dec. 20, 2016); *Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist.*, 908 F. Supp. 2d 597, 612 (M.D. Pa. 2012); *Irene B. v. Phila. Acad.*

---

[6] Although none of the pertinent factual allegations discussed involve Mastery explicitly, Mastery does not argue that it is not jointly liable with Pastorius Elementary under Title IX.

*Charter Sch.*, No. 02-1716, 2003 U.S. Dist. LEXIS 3020, at *49 n.29 (E.D. Pa. Jan. 29, 2003).

Accordingly, we conclude that charter schools are immune from punitive damages on Title IX

claims.  Plaintiff's demand for punitive damages on these claims will be dismissed.

### B.        Section 1983 Claims against all Defendants (Count II)

Plaintiff alleges Section 1983 claims against Pastorius Elementary and Mastery, as well

as Gordon, Meserve, Langston, and Patron, in their official and individual capacities.

Defendants argue that all of Plaintiff's Section 1983 claims should be dismissed because Plaintiff

has not alleged a constitutional violation.  We agree.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under

color of state law engaged in conduct that violated a right protected by the Constitution or laws

of the United States."  *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013).  Although

"public schools, as a general matter, do not have a constitutional duty to protect students from

private actors," public schools may be liable where they "create or enhance a danger that

deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process."  *Id.*

at 170, 177.  This state-created danger doctrine "embodies the principle that the government has

an obligation under the Fourteenth Amendment's Due Process Clause 'to protect individuals

against dangers that the government itself creates.'"  *Sauers v. Boro. of Nesquehoning*, 905 F.3d

711, 717 (3d Cir. 2018) (quoting *Haberle v. Troxell*, 885 F.3d 171, 176 (3d Cir. 2018).  A state-

created danger claim has the following four elements:

(1) [t]he harm ultimately caused was foreseeable and fairly direct;
(2) a state actor acted with a degree of culpability that shocks the conscience;
(3) a relationship between the state and the plaintiff existed such that the plaintiff
      was a foreseeable victim of the defendant's acts, or a member of a discrete class
      of persons subjected to the potential harm brought about by the state's actions,
      as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger
to the citizen or that rendered the citizen more vulnerable to danger than had
the state not acted at all.

*Haberle*, 885 F.3d at 176-77 (citation omitted).

We address only the fourth element because it is dispositive here.  With regard to the

fourth element—affirmative use of authority—the "mere failure to protect, couched as an

affirmative action, is not enough to satisfy this element."  *M.J.G. v. Sch. Dist. of Phila.*, 774 F.

App'x 736, 745 n.17 (3d Cir. 2019).  "[W]hile other means, including state tort claims and

criminal proceedings, are available to punish wrongdoers, the state-created danger doctrine does

not reach failures to intervene."  *Jones v. PI Kappa Alpha Int'l Fraternity, Inc.*, 765 F. App'x

802, 809-10 (3d Cir. 2019).  The fourth element "asks whether the state's conduct created or

increased the risk of danger to the plaintiff."  *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 242 (3d

Cir. 2016).

Plaintiff has not plausibly pleaded an affirmative use of authority; rather she has pleaded

a failure to intervene or protect.  During the time that Defendants were aware of the video of the

sexual assault but hesitated to contact A.J.'s legal guardian, they failed to intervene.  When

Defendants concluded that A.J. did not consent to the video, but they did not punish R.H. or

provide A.J. with counseling, they failed to intervene.  During the time that Defendants were

aware of student-on-student sexual misconduct on school grounds but failed to institute policies,

procedures, and training required by Title IX, they failed to protect.  Defendants cannot be liable

for their failures to intervene or protect under the state-created danger doctrine.  *See Morrow*,

719 F.3d at 178-79 (holding that school officials' failure to expel known assailant and take steps

to prevent known assailant from boarding victims' bus were not affirmative uses of authority);

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 284 (3d Cir. 2006) (finding that probation officer's

"inexplicable delay of ten weeks before a probation revocation hearing was scheduled" was not an affirmative use of authority); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 915-16 (3d Cir. 1997) (holding that school district's failure to lock school's back entrance did not create the opportunity for harm); *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1375-76 (3d Cir. 1992) (holding that school district and school officials' failure to report the sexual abuse to victim-students' parents or other authorities and failure to investigate sexual abuse were not affirmative uses of authority).

Since Plaintiff has not sufficiently pleaded a constitutional violation premised on a state-created danger, our analysis of Plaintiff's Section 1983 claims against all Defendants ends here. *See*, *e.g.*, *Bridges v. Scranton Sch. Dist.*, 644 F. App'x 172, 178 (3d Cir. 2016) ("Appellants cannot recover from the School District under Section 1983 for a failure to train because there was no underlying constitutional violation."); *Gayemen v. Sch. Dist. of Allentown*, 712 F. App'x 218, 221 n.3 (3d Cir. 2017) ("We agree with the District Court that [student's] *Monell* claim fails because there was no underlying constitutional violation."); *Sanford v. Stiles*, 456 F.3d 298, 313 (3d Cir. 2006) ("Because we find that no constitutional right was violated, we need not address the question whether [guidance counselor] was entitled to qualified immunity in the federal claim."). Accordingly, Plaintiff's Section 1983 claims against Defendants will be dismissed.

### C.   IIED Claims against all Individual Defendants (Count III)

Plaintiff alleges IIED claims against the individual Defendants: Gordon, Patron, Meserve, and Langston.  "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  *Hoy v. Angelone*, 720 A.2d 745,

753 (Pa. 1998) (quoting RESTATEMENT (SECOND) TORTS § 46(1) (1965)).  Outrageous conduct

has been defined by the Pennsylvania courts as conduct that is:

> so outrageous in character, and so extreme in degree, as to go beyond all possible
> bounds of decency, and to be regarded as atrocious, and utterly intolerable in a
> civilized community.  Generally, the case is one in which the recitation of the facts
> to an average member of the community would arouse his resentment against the
> actor, and lead him to exclaim, "Outrageous!"

*Kazatsky v. King David Mem'l Park*, 527 A.2d 988, 991 (Pa. 1987) (quoting RESTATEMENT

(SECOND) TORTS § 46(1) (1965)).  When considering the legal sufficiency of an IIED claim, the

"court must make the initial determination of whether a defendant's conduct was so extreme and

outrageous that recovery may be justified."  *Gray v. Great Valley Sch. Dist.*, 102 F. Supp. 3d

671, 683 (E.D. Pa. 2015) (quoting *Small v. Juniata College*, 682 A.2d 350, 355 (Pa. Super. Ct.

1996)).

The individual Defendants argue that we should dismiss Plaintiff's IIED claims because

Plaintiff's Amended Complaint fails to allege any facts that are "extreme and outrageous."  We

disagree.

Plaintiff's factual allegations demonstrate "extreme and outrageous" conduct by Meserve,

Langston, Patron, and Gordon.  Plaintiff's Amended Complaint alleges that a thirteen-year-old

student was sexually assaulted on school grounds and that a video of the sexual assault was

recorded and circulated among multiple students and staff.  Plaintiff's Amended Complaint also

alleges that the individual Defendants mishandled their investigation into the sexual assault and

video, waiting thirteen days to contact the victim's legal guardian, and concluding that the victim

had consented to the sexual assault and suspending the victim for the rest of the school year even

though they knew she had told her assailant "No."  Further, the Amended Complaint alleges that

the individual Defendants did not discipline the assailant or provide the victim with counseling.

These factual allegations, in conjunction with the allegation that the individual Defendants intentionally handled A.J.'s sexual harassment in this manner in order to deflect blame from themselves, are sufficiently outrageous to proceed on an IIED claim against these Defendants at this juncture.  *See Vicky M. v. Ne. Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 462 (M.D. Pa. 2007) ("[Director of special education, executive director, principal, supervisor of special education, and superintendent's] alleged concealment, or at the very least, inactivity, in the face of [] repeated warnings [about abusive special education teacher], constitutes outrageous behavior.").

The individual Defendants argue that they are entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. Cons. Stat. § 8541, *et seq*.  The Tort Claims Act grants local agency employees immunity from state law claims.  However, an employee is not shielded from liability where his or her conduct constituted a "crime, actual fraud, actual malice or willful misconduct."  42 Pa. Cons. Stat. § 8550.  "Willful misconduct" is "a demanding level of fault."  *Sanford*, 456 F.3d at 315.  It is "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied."  *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citations omitted).  "In other words, the term 'willful misconduct' is synonymous with the term 'intentional tort.'"  *Id*. (quoting *King v. Breach*, 540 A.2d 976, 981 (Pa. Commw. Ct. 1988)).  "Thus, even where a public employee acts with a degree of culpability equivalent to recklessness, Pennsylvania law nevertheless affords him immunity."  *Bright*, 443 F.3d at 287 (internal citation and quotation marks omitted).

The individual Defendants argue that they are entitled to immunity under the Tort Claims Act because there are no factual allegations that their conduct constituted a crime, actual fraud,

actual malice, or willful misconduct.  We disagree.  An IIED claim is inherently a claim of

willful misconduct.  *See MGJ v. Sch. Dist. of Phila.*, No. 17-318, 2017 U.S. Dist. LEXIS 80117,

at *43 (E.D. Pa. May 25, 2017) ("Statutory immunity does not bar [plaintiff's] claims for [IIED]

against [teacher, principal, and special education director].  This tort requires conduct which

would constitute willful misconduct."); *K.A. v. Abington Heights Sch. Dist.*, 28 F. Supp. 3d 356,

376 (M.D. Pa. 2014) ("With respect to the individual Defendants, . . . by the very nature of the

tort [of IIED], it is a claim of willful misconduct, which would operate to deprive these

Defendants of immunity under the [Tort Claims Act]."); *Kokinda v. Breiner*, 557 F. Supp. 2d

581, 595 (M.D. Pa. 2008) ("In light of this standard, conduct amounting to the tort of [IIED]

would constitute willful misconduct; Defendants' argument for immunity from this claim under

the [Tort Claims Act] is thus without merit."); *Morrell v. Chichester Sch. Dist.*, No. 04-2049,

2004 U.S. Dist. LEXIS 16441, at *16 (E.D. Pa. Aug. 17, 2004) ("Because the alleged intentional

infliction of emotional distress, assault, and battery are intentional torts, [Tort Claims Act]

immunity does not apply.").  In any event, Meserve, Langston, Gordon, and Patron's

mishandling of A.J.'s sexual harassment in order to deflect blame from themselves sufficiently

demonstrates willful misconduct.  These Defendants should have been aware that A.J.'s

emotional distress was "substantially certain to follow" from their delay in contacting A.J.'s

legal guardian, their failure to provide A.J. with counseling, and their decision to punish A.J. and

not R.H..  *See Renk*, 641 A.2d at 293.  Accordingly, the individual Defendants are not entitled to

immunity under the Tort Claims Act.

      Finally, the individual Defendants argue that Plaintiff is not entitled to punitive damages.

In Pennsylvania:

> [p]unitive damages may be awarded for conduct that is outrageous, because of the
> defendant's evil motive or his reckless indifference to the rights of others.  Punitive

damages must be based on conduct which is 'malicious,' 'wanton,' 'reckless,' 'willful,' or 'oppressive'.  Further, one must look to the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties.  The state of mind of the actor is vital.  The act, or the failure to act, must be intentional, reckless or malicious.

*Feld v. Merriam,* 485 A.2d 742, 747-48 (Pa. 1984) (internal citations and quotation marks omitted).  As Plaintiff's Amended Complaint adequately pleads willful misconduct, Plaintiff has stated a claim for punitive damages.  *See also MGJ*, 2017 U.S. Dist. LEXIS 80117, at *49 (denying motion to dismiss plaintiff's demand for punitive damages based upon the factual allegations that supported plaintiff's plausible IIED claim).

### D.   Breach of Fiduciary Duty Claims against all Individual Defendants (Count IV)

Plaintiff alleges breach of fiduciary duty claims against Gordon, Meserve, Langston, and Patron.  Under Pennsylvania law, "[a fiduciary] relationship exists when one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other."  *Commonwealth Dep't of Transp. v. E-Z Parks*, 620 A.2d 712, 717 (Pa. Commw. Ct. 1993) (internal citations and quotation marks omitted).  District courts in our Circuit have recognized a fiduciary duty between teachers and students; "[a] fiduciary duty is created by '[t]he basic duties which arise from the teacher-student relationship . . . [including] a duty to supervise, a duty to exercise good judgment, and a duty to instruct as to correct procedures, particularly,  not but [sic] exclusively, when potentially hazardous conditions or instrumentalities are present, and these basic duties must co-exist with the whole purpose for the teacher-student relationship.'"  *K.A.*, 28 F. Supp. 3d at 377 (quoting *Vicky M.*, 486 F. Supp. 2d at 458).

A fiduciary duty to students has also been recognized with regard to school administrators.  *See*, *e.g.*, *Vicky M*., 486 F. Supp. 2d at 463 ("The [director of special education, executive director, principal, supervisor of special education, and superintendent] were clearly in an overmastering position in their relationships vis-a-vis the [students], and were trusted and depended upon, and indeed carried the obligation, to supervise [the teacher] and insure that the [students] receive a safe and proper education."); *see also MGJ*, 2017 U.S. Dist. LEXIS 80117, at *50 (permitting breach of fiduciary duty claims to proceed against principal and special education director); *K.A*., 28 F. Supp. 3d at 378 (permitting breach of fiduciary duty claims to proceed against principal, vice-principal, and school counselor).

A claim for breach of fiduciary duty under Pennsylvania law has the following three elements:

> (1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all matters for which he was employed, or negligently or intentionally failed to use reasonable care in carrying out his duties;
> (2) that the plaintiff suffered injury; and
> (3) that the agent's failure to act solely for the plaintiff's benefit, or to use the skill and knowledge demanded of him by law, was a real factor in bringing about the plaintiff's injuries.

*Dinger v. Allfirst Fin., Inc*., 82 F. App'x 261, 265 (3d Cir. 2003) (internal citations and quotation marks omitted).  "Pennsylvania law recognizes that a lack of good faith, or bad faith, may include evasion of the spirit of the bargain,  lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."  *Id.* at 265-66 (internal citations and quotation marks omitted).[7]

---

[7] The individual Defendants argue that Plaintiff's Amended Complaint fails to allege any facts that show that any Defendant acted for his or her own personal gain.  At this juncture we

Plaintiff's Amended Complaint alleges sufficient factual allegations regarding the breach of the fiduciary duties that the individual Defendants owed to A.J. as a student at Pastorius Elementary.  These Defendants breached their fiduciary duties to A.J. by not complying with Title IX.  Meserve and Langston breached their fiduciary duties to A.J. by waiting thirteen days to contact A.J.'s legal guardian while they were aware of the video of her sexual assault circulating throughout the school.  Meserve, Langston, Patron, and Gordon breached their fiduciary duties to A.J. by punishing her and not her assailant and by not providing A.J. with counseling.  A.J.'s resulting injuries included post-traumatic stress disorder, humiliation, and the inability to access the educational program at Pastorius Elementary.  *See Vicky M.*, 486 F. Supp. 2d at 463 (finding that the plaintiff had plausibly alleged breach of fiduciary duty claims against director of special education, executive director, principal, supervisor of special education, and superintendent because their "alleged actions, or inactions, after being warned [] of [teacher's] alleged behavior represents a failure to act in the interest of the [student], and consequently a breach of the duty imposed by the fiduciary relationship.")

The individual Defendants again argue that they are entitled to immunity under the Tort Claims Act.  We again disagree.  Plaintiff's breach of fiduciary duty claims against the individual Defendants are premised on willful misconduct.  Plaintiff alleges that these Defendants failed to comply with Title IX and then intentionally mishandled A.J.'s sexual harassment to deflect blame from themselves for their failures.  These Defendants should have

---

will not consider personal gain to be a required element of this tort.  We note that the Third Circuit did not require personal gain in its *Dinger* decision.  *See Dinger*, 82 F. App'x at 265.  In any event, Plaintiff's Amended Complaint pleads that the individual Defendants acted for their own personal gain by alleging that "[Pastorius Elementary] and its administrators *sought to deflect blame for their own failures* and made the determination, based on a bogus and faulty investigation, that the sexual incident was consented to by the thirteen-year-old girl and blamed her for the incident, further victimizing her in the process."  (Am. Compl. ¶ 1) (emphasis added).

been aware that A.J.'s emotional distress was "substantially certain to follow." *See Renk*, 641 A.2d at 293; *see also MGJ*, 2017 U.S. Dist. LEXIS 80117, at *43 (denying teacher, principal, and special education director Tort Claims Act immunity on breach of fiduciary duty claims "based on their intentional failure to act in good faith."); *Vicky M*., 486 F. Supp. 2d at 461 (denying school administrators Tort Claims Act immunity because "these Defendants were aware that continued abuse of [student], amongst others, was substantially certain to follow if they did not act.").

Finally, the individual Defendants argue that Plaintiff is not entitled to punitive damages. We disagree for the same reasons that Plaintiff may seek punitive damages on her IIED claims.

## IV.        CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings will be granted in part and denied in part.

An appropriate order will follow.

**BY THE COURT:**


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**
